EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| María de L. Córdova Ramos<br>    Peticionaria<br><br>    v.<br><br>Ricardo Larín Herrera, et al<br>    Recurridos | Certiorari<br><br>2000 TSPR 79 |
|---|---|

Número del Caso: CC-1997-0664

Fecha: 02/junio/2000

Tribunal de Circuito de Apelaciones: Circuito Regional II

Panel Integrado por:

        Hon. Arbona Lago
        Hon. Negroni Cintrón
        Hon. Salas Soler

Abogadas de la Parte Peticionaria:

        Lcda. Ileana M. Díaz Guma
        Lcda. Liliana M. Kortright Soler


Abogados de la Parte Recurrida:

        Lcdo. Demetrio Fernández
        Lcda. Melva A. Quintana


Materia: Daños y Perjuicios


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María de L. Córdova Ramos

    Demandante-peticionaria

                                    CC-97-664      Certiorari

      v.

Ricardo Larín Herrera,
et al.

    Demandados-recurridos

Opinión del Tribunal emitida por el Juez Asociado señor Negrón García

San Juan, Puerto Rico, a 2 de junio de 2000

Resolvemos que el Tribunal de Circuito (Hons. Arbona Lago, Negroni Cintrón y Salas Soler), **incidió** al permitir que los demandados Larín Herrera, et al., completaran tardíamente el **Apéndice** de su petición de certiorari. **A ese momento, habían transcurridos más de dos (2) meses de vencido el término de cumplimiento estricto para presentar y perfeccionarlo**. Tampoco explicaron **en la misma petición** las circunstancias y razones especiales por las cuales no lo hicieron dentro del término original. Elaboremos.

I

La Regla 52.1 de Procedimiento Civil, dispone que "[t]odo procedimiento de apelación, -certiorari y certificación se tramitará de acuerdo con la ley aplicable, estas reglas y las reglas que adopte el Tribunal Supremo de Puerto Rico."

Según las Reglas de Procedimiento Civil y el Reglamento del Circuito, el recurso de certiorari para revisar cualquier resolución del Tribunal de Primera Instancia, debe presentarse dentro del término de **cumplimiento estricto** de treinta (30) días desde la fecha de notificación de la resolución recurrida. Dicho término es "prorrogable sólo **cuando mediaren circunstancias especiales debidamente sustentadas en la solicitud de certiorari**." Regla 53.1(e)(1); Regla 32, Reglamento Circuito.

Conforme este ordenamiento, el Circuito a solicitud de parte o iniciativa propia, puede desestimar un recurso, entre otros motivos, por haber sido presentado fuera del término legal de cumplimiento estricto, sin que exista justa causa para ello. También, si **no ha sido perfeccionado de acuerdo con la ley y reglas aplicables**. Regla 53.1(1); Regla 66, Reglamento Circuito.

Las respectivas Reglas 54.4 y 34 de ambos cuerpos requieren **un apéndice** en toda solicitud de certiorari que **incluya copia literal de una serie de documentos específicamente identificados en la regla, así como de cualesquiera otros que formen parte del expediente original en Instancia y puedan serle útil al Circuito para resolver la controversia planteada. Se exigen: alegaciones de las partes; decisión recurrida de Instancia; toda moción debidamente sellada por Instancia; resolución u orden necesaria para acreditar la interrupción y reanudación del**

**término para presentar la solicitud de certiorari; la notificación del archivo en autos de copia de la resolución u orden; y, toda moción o escrito de cualesquiera de las partes que forme parte del expediente de Instancia, en la que se discuta expresamente cualquier asunto planteado en la solicitud de certiorari.**

El comentario de la Regla 34 del Reglamento del Circuito, **refleja la importancia del apéndice.** Nos dice que "por primera vez **se requiere** de forma expresa que se acompañe copia literal de toda moción, resolución u orden necesaria para acreditar la interrupción y reanudación del término para presentar la solicitud de certiorari. **La inclusión de tales documentos en el apéndice es crucial ya que el nuevo ordenamiento procesal establece un plazo para presentar la solicitud de certiorari.**" Ciertamente, sin estos documentos el Circuito no puede constatar su autoridad jurisdiccional para dilucidar el recurso. No tiene forma de acreditar que se ha cumplido con los términos establecidos en el ordenamiento procesal.

Más aún, como el Tribunal de Circuito es un foro apelativo, en ciertos recursos tiene discreción para expedir o denegar. Este discernimiento judicial sólo puede ejercitarse recta e informadamente si posee todos esos elementos de juicio necesarios.

                              II

El certiorari presentado por los demandados Larín Herrera, et al., no fue perfeccionado —ni justificado sus

omisiones– dentro del término de cumplimiento estricto. De ciento siete (107) páginas indicadas en el índice del apéndice, sólo incluyeron las primeras cincuenta y tres (53). No se cuestiona seriamente que las páginas omitidas era documentación **esencial** y necesarias para la recta solución de las controversias planteadas. Inequívocamente, también eran documentos **cruciales** los siguientes: los utilizados para apoyar la Moción de Desestimación y/o Sentencia Sumaria; Moción Solicitando la Descalificación de Representación Legal y sus apéndices; Moción Reiterando la Solicitud de Descalificación de Abogado de los recurridos; copia de la demanda enmendada presentada el 1ro. de abril de 1997; copia de la minuta sobre los procedimientos a seguir emitida por instancia el 12 de marzo de 1997; copia de la Moción para Suplementar Moción de Desestimación y/o Sentencia Sumaria presentada por los recurridos, y las copias de **las dos (2) órdenes y sus notificaciones de instancia en torno a la cuestión central que se estaría dilucidando en el foro apelativo.**

Vemos pues, que **cuantitativa y cualitativamente** faltaron documentos necesarios y pertinentes a los planteamientos expresamente formulados en el Circuito. **Más importante aún, las páginas omitidas contenían los documentos imprescindibles para acreditar la jurisdicción,** esto es, los volantes de notificación de las órdenes de Instancia de las cuales se recurría, incluso esas mismas órdenes.

Los demandados Larín Herrera, et al., nunca intentaron ni justificaron las razones que impidieron el perfeccionamiento de la petición de certiorari dentro del término de cumplimiento estricto. El Circuito, motu propio, luego de expirado dicho término, les concedió cinco (5) días para presentarlos. Esa prórroga para perfeccionar el recurso de certiorari fue contraria a las Reglas de Procedimiento Civil, que expresamente disponen que un término de cumplimiento estricto sólo se extiende ante circunstancias especiales debidamente sustentadas **en el mismo** certiorari. Regla 53.1(e)(1).

### III

En numerosas ocasiones hemos desestimado recursos con apéndices incompletos que no nos permiten penetrar en la controversia o constatar nuestra jurisdicción. El análisis estadístico que se une como **Anejo** a esta ponencia, revela que en los últimos años hemos desestimado o declinado intervenir (no ha lugar) en numerosos recursos por **craso incumplimiento a nuestro Reglamento o falta de jurisdicción**. De éstos, un alto número ha sido por estar **incompletos los apéndices**. Nuestra jurisprudencia más recientes sigue esta misma normativa. En muchísimas ocasiones, una mayoría del Tribunal ha expresado que si la prórroga o causa justificada no se solicita dentro o en la misma petición, carecemos de discreción para atender la

solicitud.[1] Al igual que hemos tratado a esos pasados litigantes a quienes les negamos la entrada, hoy reafirmamos esa norma, a prevalecer no sólo en este Tribunal sino en el Circuito.

No convence la tesis de los demandados Larín Herrera, et al., de que no se percataron de la ausencia de tales documentos. Primero, en su proyección futura, **si establecemos este precedente y aceptamos esa excusa en este recurso, ¿en cuál podemos rechazarla?** Segundo, aquí no estamos hablando de una o pocas páginas susceptibles de traspapelarse o perderse inadvertidamente al fotocopiarse o prepararse un apéndice. **De ciento siete (107), faltan cincuenta cuatro (54) páginas; más de la mitad.**

No cabe validamente argumentar que estamos requiriendo justificar "lo imposible". La realidad es otra. Nos

---

[1] Banco Popular de P.R. v. Municipio de Aguadilla, res. en 29 de diciembre de 1997, 144 D.P.R. ____ (1997), resolvió que el Circuito carecía de discreción para eximir un requisito por el mero hecho de que éste era de cumplimiento estricto. Estableció que el ejercicio de su jurisdicción requiere que el solicitante exprese las causas justificadas para explicar su incumplimiento dentro del recurso. De igual forma, en Arriaga Rivera v. Fondo del Seguro del Estado, res. en 18 de marzo de 1988, concluyó que el Circuito no tenía discreción para aceptar un recurso en el que la parte peticionaria no había notificado a la Sala del Tribunal de Primera Instancia dentro de las cuarenta y ocho (48), horas sin demostrar la justa causa para este incumplimiento.

confrontamos con el hecho indubitado de que tales omisiones no eran desconocidas ni **debieron desconocerse**. Reafirmamos la normativa de que en recursos de "cumplimiento estricto", es menester exponer oportunamente, en el propio recurso, las razones especiales justificativas para no haberlo perfeccionado dentro del término de cumplimiento estricto. No podemos crear como excepción, la mera "inadvertencia". **De ser así, nos veríamos forzados a eliminar de las reglas la necesidad de explicación previa; rara vez una "inadvertencia" podrá explicarse antes de que ocurra.**

Las omisiones en este caso fueron esenciales, menoscabaron los derechos de las partes y afectaron la jurisdicción del Circuito. No incluir el boleto de notificación al Tribunal de Circuito, impide constatar su jurisdicción. La no presentación de los documentos necesarios y cruciales le priva de los elementos de juicio imprescindibles para descargar su misión y decidir informadamente si va a expedir y entrar en los méritos.

Sin las mociones y demás escritos de las partes, ni las órdenes o resoluciones de instancia -objetos de la revisión solicitada-, difícilmente un tribunal apelativo tiene todos los elementos de juicio para determinar si va a expedir el recurso. Sin los volantes de notificación no puede constatar si ha sido presentado a tiempo o, si al igual que ocurrió en Banco Popular de P.R. v. Municipio de Aguadilla, supra, está impedido de entrar a dilucidarlo. Se pierden los atributos de justicia rápida y económica.

Permitir al Circuito, que luego de dos (2) meses, <u>motu</u> <u>propio</u> pida a una parte peticionaria que lo ponga en condiciones para determinar si va a expedir el recurso, en nada agiliza ni fomenta la justicia; **máxime cuando se trata de dictámenes interlocutorios en procedimientos en instancia que no han acabado.**

Se dictará sentencia revocando al Circuito y devolviendo el caso a Instancia para procedimientos ulteriores.


ANTONIO S. NEGRÓN GARCÍA
Juez Asociado

**ANEJO**

CASOS EN QUE EL TRIBUNAL SUPREMO HA PROVISTO NO HA
LUGAR POR CRASO INCUMPLIMIENTO CON EL REGLAMENTO Y POR
FALTA DE JURISDICCIÓN

| Año natural | No Ha lugar por craso incumplimiento con el Reglamento | No ha lugar por Falta de Jurisdicción | Total |
|---|---|---|---|
| 1996 | 32 | 67 | 99 |
| 1997 | 43 | 63 | 106 |
| 1998 | 81 | 86 | 167 |
| 1999 | 105 | 95 | 200 |
| 2000[2] | 12 | 15 | 27 |
| Total | 273 | 326 | 599 |

_____

[2] Incluye hasta el 15 de febrero de 2000.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María de L. Córdova Ramos

    Demandante-peticionaria

                               CC-97-664      Certiorari

        v.

Ricardo Larín Herrera,
et al.

    Demandados-recurridos

SENTENCIA

San Juan, Puerto Rico, a 2 de junio de 2000

       Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente, se revoca la Resolución del Tribunal de Circuito de Apelaciones de fecha 30 de septiembre de 1997 y se devuelve el caso al Tribunal de Primera Instancia para procedimientos ulteriores.

       Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Naveira de Rodón emitió Opinión Disidente a la cual se une el Juez Presidente señor Andréu García. El Juez Asociado señor Fuster Berlingeri no intervino.

                         Isabel Llompart Zeno
                          Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María de L. Córdova Ramos

    Demandante peticionaria


      v.

                          CC-1997-664

Ricardo Larín Herrera,
Caribbean Pulmonary Care, Inc.,
Metro Oxigen & Equipment, Inc.,
Fabiola Fernández Chaves

    Demandados recurridos

Opinión Disidente emitida por la Juez Asociada señora Naveira de Rodón a la cual se une el Juez Presidente señor Andréu García.

San Juan, Puerto Rico a 2 de junio de 2000

    Por entender que el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito), no incidió al permitir que los recurridos Larín Herrera, et al. completaran tardíamente el apéndice de su petición de certiorari, disentimos de la Opinión que hoy certifica la mayoría de este Tribunal.

    Contrario al criterio mayoritario, la actuación del Tribunal de Circuito debe ser evaluada a la luz de un enfoque pragmático, conforme a la jurisprudencia que fue desarrollada para lograr una interpretación flexible de su Reglamento y

que mantiene vigente el principio cardinal de que la discreción judicial ha de ejercerse en favor de que las controversias judiciales sean atendidas en sus méritos.

Es, pues, bajo este enfoque que procede dilucidar si un recurso de certiorari instado oportunamente ante el Tribunal de Circuito, el cual dejó de incluir una serie de documentos <u>anunciados en el índice de su apéndice</u>, debió ser desestimado por incumplimiento con el Reglamento de dicho tribunal. Como corolario de lo anterior nos corresponde entonces resolver si el Tribunal de Circuito abusó de su discreción al permitir la inclusión de tales documentos fuera del plazo de cumplimiento estricto dispuesto por el Art. 4.002(f) del Plan de Reorganización Núm. 1 de la Rama Judicial, aprobado el 28 de julio de 1994, conocido como la Ley de la Judicatura de Puerto Rico de 1994, según enmendada, 4 L.P.R.A. sec. 22k(f).

A continuación exponemos los hechos pertinentes conforme surgen de los documentos que obran en autos.

I

El 16 de septiembre de 1996, la Sra. María de Lourdes Córdova Ramos instó ante el Tribunal de Primera Instancia, Sala Superior de San Juan, una acción contra Caribbean Pulmonary Care, Inc. (Caribbean), Metro Oxigen and Equipment, Inc. (Metro), Ricardo Larín Herrera y la Lcda. Fabiola Fernández Chaves, (aquí recurridos).[3] Alegó que fue contratada como empleada por tiempo indefinido por Caribbean y Metro. En un principio estuvo a cargo de la facturación. Posteriormente, fue nombrada gerente de ambas compañías. Sostuvo que el 21 de junio de 1996, mientras se encontraba en su trabajo, fue agredida física y verbalmente por la licenciada Fernández Chaves. Adujo que este incidente causó el que la licenciada Fernández Chaves lograra, a través

---

[3] Conforme surge de la demanda, Caribbean y Metro son corporaciones organizadas al amparo de la Ley de Corporaciones de Puerto Rico. Sus oficinas principales están localizadas en Guaynabo y operan el negocio de renta y venta de equipo médico a pacientes privados y a pacientes de Medicare, entre otros. Por otra parte, de los documentos que obran en autos surge que el Sr. Ricardo Larín Herrera es el presidente y accionista principal de las compañías Caribbean y Metro. Surge, además, que la Lcda. Fabiola Fernández Chaves fue la asesora legal de Caribbean desde el 25 de septiembre de 1992 hasta el 30 de octubre de 1995.

del señor Larín Herrera, que las compañías recurridas la despidieran el

26 de agosto de 1996.

La señora Córdova Ramos reclamó compensación contra todos los

recurridos por: (i) despido injustificado; (ii) haber sido hostigada

por defender sus derechos; (iii) libelo y difamación (esta reclamación

sólo contra el señor Larín Herrera y la licenciada Fernández Chaves); y

(iv) daños, angustias y sufrimientos mentales por la agresión de la que

alega fue víctima por parte de la licenciada Fernández Chaves,

individualmente y en confabulación con el señor Larín Herrera.[4]

El 30 de diciembre de 1996 y después de haber contestado la
acción, los recurridos, representados por el Lcdo. Demetrio Fernández
Quiñones, interpusieron una moción denominada Desestimación y/o
Sentencia Sumaria, en la cual alegaron que: (i) el despido de la señora
Córdova Ramos fue justificado ya que ésta fue negligente en el
desempeño de sus labores; (ii) el recurrido Larín Herrera no era
patrono de ésta y que, conforme a las alegaciones expuestas en la
demanda, no se le imputaba hecho alguno el cual estableciera que
incurrió en culpa o negligencia o en libelo o difamación; y (iii) de la
demanda no se configuraba una acción de interferencia contractual que
hiciera responsable a la recurrida licenciada Fernández Chaves. Con la
referida moción acompañaron una serie de documentos para apoyar lo
antes dicho.

La señora Córdova Ramos solicitó un término para expresarse. El
tribunal se lo concedió; sin embargo, ésta no presentó escrito alguno
respecto a dicha moción.[5]

Así las cosas, las partes comparecieron al tribunal de instancia

para la discusión de los términos a seguir en el descubrimiento de

prueba. Fue en ese momento que la señora Córdova Ramos solicitó la

descalificación del licenciado Fernández Quiñones como abogado de todos

---

[4]     Originalmente, la demanda fue presentada en el Tribunal de Primera
Instancia, Sala Superior de San Juan, a pesar de que las compañías
demandadas tenían sus oficinas principales en Guaynabo. A iniciativa
del propio tribunal, la acción fue trasladada al Tribunal de Primera
Instancia, Sala Superior de Bayamón, por ser éste el foro competente
para entender en el asunto. El 2 de octubre de 1996, la demanda fue
enmendada a los fines de responsabilizar directamente a los demandados
recurridos licenciada Fernández Chaves y Larín Herrera, por los
alegados actos de agresión. A este último se le responsabilizó tanto
en su carácter personal como en su carácter de presidente y supervisor
directo de la demandante peticionaria.

El 1ro de abril de 1997, conforme a las directrices del tribunal de instancia, la señora Córdova
Ramos sometió una tercera demanda enmendada a los fines de separar las causas de acción en que ésta
fundamentaba su reclamación.

Para efectos de este caso, la demanda a la cual hacemos referencia es la enmendada por segunda vez
a solicitud del tribunal de instancia.

[5]     En la petición de certiorari ante nos, la señora Córdova Ramos expresó que no presentó escrito
alguno ante el tribunal de instancia porque entendió que debía esperar a que dicho tribunal resolviera, en
primera instancia, la moción de descalificación que ésta presentara contra el licenciado Fernández
Quiñones.

los recurridos. Adujo que a tenor con el Canon 21 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, existe un conflicto de intereses por razón de que dicho abogado actuó como defensor de la recurrida, licenciada Fernández Chaves, en el caso criminal por el delito de agresión. Además, la representó en el procedimiento de acción disciplinaria ante el Tribunal Supremo. El tribunal de instancia le concedió término a la parte recurrida para contestar la moción de descalificación. Sin haber respondido aún a la moción de descalificación, el 15 de abril de 1997 éstos presentaron una Moción para Suplementar la Moción de Desestimación y/o Sentencia Sumaria.

Posteriormente, la señora Córdova Ramos presentó una moción en la cual reiteró su solicitud en cuanto a la descalificación del abogado de los recurridos. Alegó, además, que había transcurrido el término concedido para oponerse a dicha solicitud de descalificación sin que la otra parte así lo hiciese.

El 16 de mayo de 1996 el foro de instancia desestimó la Moción para Suplementar la Moción de Desestimación y/o Sentencia Sumaria, y a tenor con el Canon 21 del Código de Ética Profesional, supra, descalificó al licenciado Fernández Quiñones. Ambas órdenes fueron notificadas a las partes y archivadas en autos la copia de su notificación el 5 de junio de 1997.

Inconformes, el 30 de junio de 1997 los demandados recurridos presentaron y notificaron **oportunamente** una petición de certiorari en el Tribunal de Circuito. Adujeron que el tribunal de instancia cometió un grave error al denegar la solicitud de desestimación y/o sentencia sumaria, así como al descalificar al licenciado Fernández Quiñones como abogado de los recurridos. Con la petición de certiorari se incluyó un apéndice que contenía cincuenta y tres (53) páginas. Sin embargo, en el índice del recurso se hizo constar que éste contenía ciento siete (107) páginas. Cabe mencionar que no existe documento alguno que indique que la señora Córdova Ramos llamó la atención del Tribunal de Circuito sobre este particular. Sólo surge de los autos que ésta

presentó, el 15 de julio de 1997, una moción en la que solicitó término para oponerse a la petición de certiorari. Tampoco surge que el Tribunal de Circuito se expresara sobre la solicitud de prórroga o que la señora Córdova Ramos haya presentado su escrito de oposición.[6]

El 10 de septiembre de 1997, ya expirado el plazo para el perfeccionamiento del recurso, el Tribunal de Circuito emitió una resolución en la cual hizo constar que, según el índice del apéndice, éste constaba de ciento siete (107) folios y que sólo se acompañaron "los primeros [cincuenta y tres] 53, faltando los correspondientes a los números [cincuenta y cuatro] 54 y [ciento siete] 107 ambos inclusive". Por consiguiente, le concedió cinco (5) días a los recurridos para completarlo. La señora Córdova Ramos no objetó a esta resolución.

Dentro del término concedido, los recurridos cumplieron con la resolución, presentando, el 15 de septiembre de 1997, los folios omitidos.

El 30 de septiembre de 1997 el Tribunal de Circuito dictó resolución revocando en esencia la decisión del tribunal de instancia de denegar la moción de sentencia sumaria. También revocó la descalificación del licenciado Fernández Quiñones, por considerar que no existía conflicto de intereses alguno.[7]

Inconforme con este dictamen, la señora Córdova Ramos presentó oportunamente ante nos un recurso de certiorari. Alegó la comisión de los errores siguientes:

> ERRÓ EL TRIBUNAL DE CIRCUITO DE APELACIONES AL CONSIDERAR UN RECURSO APELATIVO QUE INCUMPLIÓ CON LAS DISPOSICIONES DE LA LEY DE LA JUDICATURA DE 1994, SEGÚN ENMENDADA, Y CON SU PROPIO REGLAMENTO.

---

[6] Es de notar, sin embargo, que el Tribunal de Circuito expuso en su sentencia que la demandante peticionaria había presentado su alegato.

[7] Como podrá notarse y contrario a lo señalado por la mayoría, no se trata de un incidente interlocutorio sin importancia, sino de un asunto que podría disponer de una porción sustancial del caso, propiciando así una norma central de todo proceso, el lograr que el tribunal imparta justicia de forma rápida y económica.

ERRÓ EL TRIBUNAL DE CIRCUITO DE APELACIONES AL CONSIDERAR EN LOS MÉRITOS UN ESCRITO TITULADO "MOCIÓN DE DESESTIMACIÓN Y/O SENTENCIA SUMARIA", A PESAR DE QUE EL TRIBUNAL DE PRIMERA INSTANCIA NO LO HABÍA CONSIDERADO AÚN NI HABÍA EMITIDO NIGUNA DETERMINACIÓN SOBRE EL MISMO, Y LA PARTE DEMANDANTE NO HABÍA SOMETIDO SU OPOSICIÓN, VIOLANDO ASÍ EL DEBIDO PROCEDIMIENTO DE LEY EN SU ASPECTO PROCESAL, A LA PARTE DEMANDANTE.

ERRÓ EL TRIBUNAL DE CIRCUITO DE APELACIONES AL REVOCAR LA DETERMINACIÓN DEL TRIBUNAL DE PRIMERA INSTANCIA DE DESCUALIFICAR [SIC] AL LCDO. DEMETRIO FERNÁNDEZ [QUIÑONES] POR VIOLACIÓN AL CANON 21 DE ÉTICA PROFESIONAL.

El 30 de enero de 1997, emitimos la resolución siguiente:

A tenor con lo resuelto en Banco Popular de Puerto Rico v. Municipio de Aguadilla, Opinión de 29 de diciembre de 1997, 144 D.P.R. ___ (1997), 97 JTS 152, muestre causa la parte [recurrida] por la cual no deberíamos revocar la Resolución del 30 de septiembre de 1997 emitida por el Tribunal de Circuito de Apelaciones; ya que el recurso ante el Tribunal de Circuito no fue perfeccionado en tiempo y no se adujo justificación alguna ... en la petición de certiorari....

Los recurridos comparecieron mediante Escrito de Cumplimiento de Orden. Señalaron que la no inclusión de ciertos folios en el apéndice del recurso de certiorari interpuesto ante el Tribunal de Circuito no se debió a la desatención de los requisitos específicos de su reglamento ni a falta de interés. Adujeron que tal omisión fue un evento aislado, involuntario y sin intención de lesionar los derechos de las partes o atentar contra la dignidad del tribunal.

II

La Regla 34E(1) del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A, en lo aquí pertinente, requiere que toda solicitud de certiorari que se presente ante dicho tribunal incluya un apéndice que contenga una copia literal de:

(a)   Las alegaciones de las partes, a saber:

(i)   En casos civiles: la demanda principal, la de coparte o de tercero(a) y reconvención, con sus respectivas contestaciones;

(ii)  en casos criminales: la denuncia y la acusación, si la hubiere.

(b)  La decisión del Tribunal de Primera Instancia cuya revisión se solicita, incluyendo las determinaciones de hechos [sic] y las conclusiones de derecho en que esté fundada, si las hubiere y la notificación del archivo en autos de copia de la notificación de la decisión, si la hubiere.

(c)  Toda moción debidamente sellada por el Tribunal de Primera Instancia, resolución u orden necesaria para acreditar la interrupción y reanudación del término para presentar la solicitud de certiorari y la notificación del archivo en autos de copia de la resolución u orden.

(d)  Toda resolución u orden, y toda moción o escrito de cualesquiera de las partes que forme parte del expediente original en el Tribunal de Primera Instancia, en los cuales se discuta expresamente cualquier asunto planteado en la solicitud de certiorari, o que sean relevantes a ésta.

(e)  Cualquier otro documento que forme parte del expediente original en el Tribunal de Primera Instancia y que pueda ser útil al Tribunal de Circuito de Apelaciones a los fines de resolver la controversia.

Por sus propios términos y en armonía con lo dispuesto en las Reglas 52.1, 53.3 y 54.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, la citada regla establece cuál ha de ser el contenido del apéndice de una solicitud de certiorari ante el Tribunal de Circuito.

En el presente caso, los recurridos presentaron su petición de certiorari ante el Tribunal de Circuito dentro del término de cumplimiento estricto dispuesto por el Art. 4.002(f) de la Ley de la Judicatura de Puerto Rico de 1994, según enmendada, supra.[8]  Éstos también notificaron a la parte contraria dentro de dicho término.  El recurso, sin embargo, no contenía todos los documentos requeridos por la Regla 34E(1), supra, ya que su apéndice no estaba completo.  De ciento siete (107) páginas **indicadas en el índice**, sólo se anejaron las primeras cincuenta y tres (53).  No se incluyeron de las páginas

---

[8]  En lo pertinente, dicho artículo dispone lo siguiente:

Mediante auto de *certiorari* expedido a su discreción, de cualquier otra resolución u orden dictada por el Tribunal de Primera Instancia, incluyendo el Tribunal de Distrito durante el proceso de su abolición.  En estos casos, el recurso de *certiorari* se formalizará presentando una solicitud dentro de los treinta (30) días siguientes a la fecha de notificación de la resolución u orden.  El término aquí dispuesto es de cumplimiento estricto, excepto cuando mediaren circunstancias especiales debidamente sustentadas en la petición de *certiorari*.  (Énfasis suplido.)

cincuenta y cuatro (54) a la ciento siete (107), páginas que contenían documentación esencial para resolver las controversias planteadas.[9]

Los recurridos no justificaron en el propio recurso los motivos que impidieron el perfeccionamiento de la petición de certiorari dentro del término de cumplimiento estricto. Como bien expusieran en su moción en cumplimiento de la orden de mostrar causa, esto resultaba imposible. El problema surgió precisamente **porque no se percataron de la ausencia de tales documentos al presentar el escrito de certiorari**. No obstante, el Tribunal de Circuito, a su propia iniciativa y luego de expirado el término para la presentación y perfeccionamiento del recurso, le concedió a éstos un plazo de cinco (5) días para completar el apéndice.

En el escrito ante nos, la señora Córdova Ramos señaló que la actuación del Tribunal de Circuito equivale a haber concedido una prórroga a los demandados recurridos para perfeccionar el recurso de certiorari fuera del término de cumplimiento estricto dispuesto por ley, sin mediar circunstancias debidamente sustentadas en la petición de certiorari que lo justificaran. Concluyó que al así actuar, dicho tribunal abusó de su discreción.

En atención a todo lo anteriormente expuesto, debemos determinar si el Tribunal de Circuito abusó de su discreción al permitir incluir las páginas omitidas del apéndice pasado el plazo de cumplimiento estricto dispuesto por ley.

III

---

[9] Entre los documentos ausentes figuraban: los utilizados para apoyar la Moción de Desestimación y/o Sentencia Sumaria; Moción Solicitando la Descalificación de Representación Legal y sus apéndices; Moción Reiterando la Solicitud de Descalificación de Abogado de los recurridos; copia de la demanda enmendada presentada el 1ro. de abril de 1997; copia de la minuta sobre los procedimientos a seguir emitida por el tribunal de instancia el 12 de marzo de 1997; copia de la Moción para Suplementar Moción de Desestimación y/o Sentencia Sumaria presentada por los recurridos, y las copias de las dos (2) órdenes y sus notificaciones emitidas por el tribunal de instancia en torno a la descalificación del representante legal de los recurridos, y a la Moción para Suplementar la Moción de Desestimación y/o Sentencia Sumaria.

En Bco. Popular de P.R. v. Mun. de Aguadilla, Op. de 29 de diciembre de 1997, 144 D.P.R. ___(1997), 97 JTS 152, pág. 444, nos expresamos en torno al término "discreción". Allí dijimos que el mismo constituía aquella "[s]ensatez para formar juicio y tacto para hablar y obrar". En el contexto de nuestro ordenamiento jurídico, dijimos que discreción era "**una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera**", y que no significaba "**poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho...**". (Énfasis en el original y citas omitidas.) Además, citamos con aprobación las expresiones de Pueblo v. Ortega Santiago, 125 D.P.R. 200, 214 (1990), en torno a lo que constituye abuso de discreción. Específicamente expresamos que, "[e]l juez so pretexto de ejercer su discreción, no puede olvidarse de, ni relegar a un segundo plano, los mandatos y dictados de nuestra Constitución y los de las leyes, pertinentes a la cuestión en controversia, que han tenido a bien promulgar los funcionarios de las Ramas Legislativa y Ejecutiva.... Los tribunales estamos autorizados a interpretar las leyes cuando, entre otras, éstas no son claras o concluyentes sobre un punto en particular; cuando el objetivo, al realizarlo, es el de suplir una laguna en la misma; o cuando, con el propósito de mitigar los efectos adversos de la aplicación de una ley a una situación en particular, la justicia así lo requiere. Estamos impedidos, sin embargo, de obviar los mandatos claros y específicos de una ley cuando la misma es constitucionalmente válida." (Énfasis suplido y en el original.)

Con este preámbulo procedemos a dilucidar si en efecto el Tribunal de Circuito abusó de su discreción al acoger el recurso.

IV

Los abogados tienen la obligación insoslayable de perfeccionar los recursos presentados, no sólo ante este Tribunal, sino también ante el Tribunal de Circuito conforme a los trámites prescritos en las leyes y

los reglamentos.    Véanse: <u>Arriaga Rivera</u> v. <u>Fondo del Seguro del Estado</u>, Op. de 18 de marzo de 1998, 144 D.P.R.___(1998), 98 JTS 28, págs. 687-88; <u>Matos</u> v. <u>Metropolitan Marble Corp.</u>, 104 D.P.R. 122, 125 (1975).

Por su parte, los incisos (k) y (l) de la Regla 53.1 de Procedimiento Civil, supra, disponen, en lo pertinente, que **"si el ... recurrente dejare de hacer cualquiera de las gestiones ulteriores para perfeccionar ... [e]l recurso de <u>certiorari</u> ..." [e]l tribunal de apelación <u>podrá</u>, por iniciativa propia o a solicitud de parte, desestimar[lo]...".** (Énfasis nuestro.)

Ciertamente, el propósito de cumplir con los requisitos establecidos en las reglas procesales y en los reglamentos, es engendrar un mayor grado de eficiencia y productividad en la tramitación de los recursos que se presenten. <u>Soc. de Gananciales</u> v. <u>García Roble</u>, P.C. de 23 de enero de 1997, 142 D.P.R.___(1997), 97 JTS 7, pág. 511.

Sin embargo, **"'[p]or lo prolífica que ha sido la legislación en cuanto a la creación de recursos y por su énfasis en los detalles[,] [los cuales han hecho que] la litigación se[a] ... cada vez más compleja'"**, hemos adoptado la política de que **"'los tribunales podemos y habremos de ser flexibles en la interpretación de implantación de estas leyes [y reglamentos]'"**. (Énfasis suplido.)[10]  Esta tendencia a ser flexibles responde al principio fundamental que impera en nuestro ordenamiento y que ha sido reiterado en nuestras decisiones de que las controversias sean atendidas en sus méritos.   Así por ejemplo, en armonía con esta filosofía, hemos señalado que el Tribunal de Circuito abusó de su discreción al desestimar un recurso de <u>certiorari</u> que, <u>aunque presentado dentro del término de cumplimiento estricto de treinta (30) días</u>, fue corregido --para subsanar un defecto de forma (incluir documentos a espacio sencillo)-- al otro día de haber expirado

el plazo antes señalado.  <u>Santos y otros</u> v. <u>Mun. de Comerío</u>, P.C. de 31 de enero de 1996, 140 D.P.R.____(1996), 96 JTS 13. Véase, además, <u>López Rivera</u> v. <u>Rivera Díaz</u>, P.C. de 28 de junio de 1996, 141 D.P.R.____(1996), 96 JTS 102.

Posteriormente, en <u>Soc. de Gananciales</u> v. <u>García Roble</u>, supra,[11] nuestra política de actuar con mayor flexibilidad en la interpretación de los Reglamentos tomó un nuevo giro, al utilizar como eje central los intereses de las partes involucradas.  Enfatizamos nuestro interés de lograr, por todos los medios razonables y sin violentar las normas jurisdiccionales, el que las decisiones emitidas por el Tribunal de Primera Instancia puedan ser revisadas por un tribunal apelativo intermedio y, a su vez, el promover el funcionamiento adecuado del Tribunal de Circuito.  El producto de este balance debe asegurar la atención justa, rápida y económica de las controversias que se presentan ante dicho foro.

Ahora bien, en <u>Banco Popular</u> v. <u>Mun. de Aguadilla</u>, supra, el Tribunal de Circuito, en el ejercicio de su discreción, acogió un recurso de <u>certiorari</u> interpuesto por el Municipio once (11) días después de haberse cumplido el plazo de cumplimiento estricto de treinta (30) días que dicha parte tenía para presentar su recurso.  En dicha ocasión resolvimos que el Tribunal de Circuito, en ausencia de que la parte acreditara la justa causa para la tardanza –como lo exige el estatuto– no tenía discreción para prorrogar el término de cumplimiento estricto. [12]

---

[10]    Palabras de la Juez Asociada del Tribunal Supremo, Hon. Miriam Naveira de Rodón, en la conferencia que diera a los jueces de instancia y apelativos del país sobre los cambios recientes de la Ley de la Judicatura citadas con aprobación en <u>Soc. de Gananciales</u> v. <u>García Roble</u>, supra, pág. 511.

[11]    En dicho caso resolvimos que el Tribunal de Circuito incurrió en un abuso de discreción al desestimar un recurso de apelación en un caso civil por el apelante no haber presentado oportunamente un exposición narrativa de la prueba a pesar de que los señalamientos de error, por él hechos, iban dirigidos a impugnar la apreciación de la prueba testifical que había realizado el tribunal de instancia.  También idicamos que antes de proceder con la sanción drástica de la desestimación, el tribunal debió ordenar la preparación de la exposición narrativa de la prueba que estimaba necesaria para ejercer su función revisora.

[12]    Véase, también, <u>Arriaga Rivera</u> v. <u>Fondo del Seguro del Estado</u>, supra.  En este caso resolvimos que el Tribunal de Circuito debe denegar un recurso de certiorari al haber incumplido la parte peticionaria con el requisito de estricto cumplimiento establecido en la Regla 33(A) del Reglamento de ese tribunal, 4 L.P.R.A. Ap. XXII II-A, de notificar con copia del recurso a la sala correspondiente del Tribunal de

El presente caso es claramente distinguible.   Aquí la parte demandada recurrida, contrario a Bco. Popular v. Mun. de Aguadilla, supra, acudió en tiempo al Tribunal de Circuito.   Sin embargo, por inadvertencia, el recurso fue presentado con un apéndice incompleto. Bajo estas circunstancias era **imposible** que pudiese aducir en el propio recurso la justificación para no haberlo perfeccionado dentro del término de cumplimiento estricto dispuesto en la Ley y los Reglamentos. El Tribunal de Circuito, en el ejercicio de su discreción e interpretando la Ley y su Reglamento de forma flexible y sensata, conforme hemos esbozado en la jurisprudencia citada, permitió subsanar la inadvertencia y completar el apéndice.

A la luz de los argumentos reseñados, contrario a lo resuelto por la mayoría, entendemos que el Tribunal de Circuito, **sin menoscabar los derechos de las partes ni afectar su jurisdicción**, e interpretando correctamente las disposiciones que requieren justificar la dilación en el perfeccionamiento en el propio recurso, ejerció correctamente su discreción al aceptar los documentos excluidos.   En nuestro criterio, su actuación avala el principio cardinal que impera en nuestro ordenamiento procesal de propiciar una solución en los méritos justa, rápida y económica de las controversias judiciales, desechando el tecnicismo que resultaría o pudiera resultar en una grave injusticia. En el caso de autos entendemos que decidir lo contrario **equivaldría a exigir una justificación de lo que se desconoce, o sea, requerir lo imposible.**   Por todo lo antes expuesto disentimos de la mayoría.   Somos de la opinión que el primer error no se cometió.

Habiendo sobrepasado este primer escollo procesal, procede que atendamos el segundo y tercer error.[13]

V

---

Primera Instancia dentro de las cuarenta y ocho (48) horas siguientes a la presentación del recurso, sin el peticionario haber demostrado cabalmente la justa causa para el incumplimiento.

[13] Para propósitos de la discusión invertiremos el orden de los restantes errores que expuso la demandante peticionaria en el recurso ante nos.

En su segundo señalamiento la señora Córdova Ramos sostiene que incidió el Tribunal de Circuito al resolver que el foro de instancia erró al descalificar al licenciado Fernández Quiñones como abogado de todos los recurridos. Adujo, que a tenor con lo dispuesto en el Canon 21 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, existía un conflicto de intereses por razón de que dicho abogado actuó como defensor de la recurrida licenciada Fernández Chaves en el caso criminal por el delito de agresión. Además, también la representó en un procedimiento de acción disciplinaria ante este Foro. Ambos son procedimientos surgidos como resultado de los hechos que dieron lugar a la acción incoada en este caso. No le asiste la razón.

El Canon 21 del Código de Ética Profesional, supra, va dirigido a **evitar que el letrado incurra en la representación de intereses encontrados.**

En esencia, enuncia tres (3) situaciones específicas que el abogado debe evitar, a saber: (1) aceptar la representación legal cuando a su juicio ésta pueda verse afectada por sus expectativas o intereses personales; (2) aceptar la representación legal simultánea de dos (2) clientes distintos con intereses contrapuestos; y (3) aceptar la representación de un cliente en asuntos que puedan afectar cualquier interés de un cliente anterior. In re Toro Cubergé, Op. de 2 de abril de 1996, 140 D.P.R.____ (1996), 96 JTS 48, págs. 936-937.

La primera prohibición intenta evitar que un abogado omita el tomar determinada acción a favor de su cliente porque la misma frustraría algún interés propio que el abogado quiera defender o promover. La segunda y tercera situación están relacionadas entre sí. Ambas están dirigidas a garantizarle "a todo cliente que las confidencias y secretos que compartió con su abogado no serán utilizados en su contra en beneficio de una representación antagónica, de un cliente simultáneo o posterior." Otaño v. Vélez, P.C. de 30 de octubre de 1996, 141 D.P.R.____ (1996) 96 JTS 142, pág. 279. En virtud

de esto, un abogado no debe ostentar la representación simultánea o sucesiva de dos (2) clientes, independientemente de la aprobación otorgada por éstos, cuando entre ambas representaciones exista una relación sustancial que implique intereses adversos. P.R. Fuels, Inc. v. Empire Gas Co., Inc., 133 D.P.R. 112, 118-122(1993).

No obstante a lo anterior, hemos reconocido que ante la ausencia de un posible conflicto de intereses, el Canon 21, supra, no tiene disposición alguna que prohiba la representación simultánea o sucesiva de dos (2) clientes por un mismo abogado. Otaño v. Vélez, supra. Véase, además, Liquilux Gas Corp. v. Berríos, Zaragoza, Op. de 30 de junio de 1995, 138 D.P.R.___(1995), 95 JTS 92, pág. 1037. Así, por ejemplo, en Fed. Pesc. Playa Picúas v. U.S. Inds., Inc., 135 D.P.R. 303, 316 (1994), expresamos que los notarios que autorizan escrituras pueden comparecer posteriormente en representación de uno de los otorgantes siempre y cuando todas las partes otorgantes estén en el mismo lado del pleito.

Es norma reiterada que un tribunal, en el ejercicio de su poder inherente, puede descalificar a un abogado que incumple con su deber de evitar hasta la apariencia de que representa intereses encontrados con los de su cliente. Cabe señalar que el conflicto de intereses que obliga al abogado a renunciar a la representación legal del cliente no tiene que quedar establecido claramente; basta con que el conflicto sea potencial. Así pues, resulta innecesario aportar prueba sobre una violación ética ya que en caso de duda la mera apariencia de impropiedad podrá dar paso a la descalificación. Fed. Pesc. Playa Picúas v. U.S. Inds., Inc., supra. Véase, también, Otaño v. Vélez, supra.

Ahora bien, cuando la parte contraria es la que solicita la descalificación, entonces el tribunal debe dilucidar la petición a la luz de los elementos siguientes: (i) si quien solicita la descalificación tiene legitimación activa para invocarla, es decir, si demostró que la representación le causó perjuicio o ventaja indebida;

(ii) la gravedad del conflicto de interés de que se trate; (iii) la complejidad del derecho o hechos pertinentes; (iv) la experiencia en dicho campo de los abogados involucrados; (v) la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la resolución justa, rápida y económica del caso; y (iv) el fin de la descalificación, es decir, si está siendo utilizada para dilatar los procedimientos o para obtener alguna ventaja procesal. Liquilux Gas Corp. v. Berríos, Zaragoza, supra. Junto a estos factores, el tribunal debe sopesar además, el derecho que tiene todo ciudadano de escoger libremente el abogado que lo represente. Otaño v. Vélez, supra. Véase, además, Sánchez Acevedo v. E.L.A., 125 D.P.R. 432, 438 (1990).

En el presente caso la descalificación la solicitó la parte contraria, es decir, la demandante peticionaria, señora Córdova Ramos. Conforme a la normativa expuesta, es forzoso concluir que de los documentos y argumentos esbozados por ésta, no surge la existencia de un conflicto real; ni siquiera existe algún conflicto potencial o aparente que haga necesaria la descalificación del licenciado Fernández Quiñones como representante legal de los recurridos. El haber representado a la recurrida Fernández Chaves en la causa criminal ya concluida y en la querella ante el Tribunal Supremo no representa conflicto alguno real o aparente con relación a los demás recurridos en la acción civil actual de la cual Fernández Chaves también es parte. Por las razones antes expuestas entendemos que el segundo error señalado no se cometió.

VI

En el último señalamiento la señora Córdova Ramos alegó que el Tribunal de Circuito violó su derecho al debido proceso de ley al considerar los méritos de la Moción de Desestimación y/o Sentencia Sumaria de los demandados recurridos, pues ésta aún no había sido

atendida por el tribunal de instancia. Arguyó que el foro de instancia estaba impedido de resolver dicha moción hasta tanto no dilucidara la solicitud de descalificación del representante legal de los demandados. Adujo que fue por esta razón que en la resolución que emitiera declaró sin lugar la Moción para Suplementar la Desestimación y/o Sentencia Sumaria y no la Moción de Desestimación y/o Sentencia Sumaria. El error señalado no se cometió.

Es cierto que la resolución del tribunal de instancia, y de la cual recurrieron los demandados recurridos al Tribunal de Circuito, se refiere a la Moción para Suplementar la Desestimación y/o Sentencia Sumaria, y no a la Moción de Desestimación y/o Sentencia Sumaria en sí. Sin embargo, de una lectura de la moción suplementaria se desprende con meridiana claridad, que en dicha moción, los recurridos, luego de examinar la segunda demanda enmendada, reiteraron las expresiones originales plasmadas en la Moción de Desestimación y/o Sentencia Sumaria. Por consiguiente, al declarar sin lugar la Moción para Suplementar la Desestimación y/o Sentencia Sumaria el tribunal estaba, como cuestión de hecho, denegando la Moción de Desestimación y/o Sentencia Sumaria. Bajo estas circunstancias, nada impedía que los recurridos solicitaran del Tribunal de Circuito la revisión de dicha solicitud de desestimación y/o sentencia sumaria. Tampoco se le privó de un debido proceso de ley.

Cabe señalar además que la señora Córdova Ramos sí tuvo la oportunidad de expresarse en cuanto a la Moción de Desestimación y/o Sentencia Sumaria. Incluso el foro de instancia le concedió una prórroga para que refutara la misma. Sin embargo, como señaló en su escrito, no presentó oposición alguna porque entendió que debía esperar a que el foro de instancia resolviera la moción de descalificación. En otras palabras, no cumplió con la orden que emitiera dicho foro. Siendo única responsable de su actuación, ahora no puede alegar que no tuvo oportunidad de refutar la moción de desestimación.

Ahora bien, es una norma procesal reconocida el que en una moción una parte puede solicitar uno o más remedios al amparo de una o más de las Reglas Procesales. En el caso de autos los recurridos solicitaron, en una sola moción y con relación a las distintas causas de acción reclamadas en la demanda, los remedios de desestimación y sentencia sumaria. Pasemos ahora a analizar en primera instancia la figura procesal de la sentencia sumaria.

Sabido es que el mecanismo de sentencia sumaria es un instrumento procesal valioso para que en situaciones apropiadas se dicte sentencia sin necesidad de celebrar una vista. Véase, Consejo Tit. C. Parkside v. MGIC Fin. Corp., 128 D.P.R. 538, 548-49, (1991). El tribunal tiene discreción para dictar sentencia a favor de cualesquiera de las partes, cuando de los documentos no controvertidos que se acompañaron con la solicitud surge que no existe disputa de hechos a ser dirimida en juicio, y que sólo resta aplicar el derecho. Soto v. Rivera, Op. de 9 de diciembre de 1997, 144 D.P.R. ___ (1997) 97 JTS 145, págs. 368-69. Es a la parte promovente a la que le corresponde, en primera instancia, demostrar que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho procede dictarse la sentencia sumaria a su favor. Soto v. Rivera, supra. La parte opositora, si quiere defenderse, tiene entonces que poner en controversia los hechos presentados por la parte promovente. Como regla general, para derrotar una moción de sentencia sumaria, no basta con presentar meras alegaciones, hay que presentar contradeclaraciones juradas y documentos que creen una genuina controversia sobre los hechos materiales sustanciales. Audiovisual Lang. v. Sist. Est. Natal Hns., Op. de 15 de diciembre de 1997, 144 D.P.R.___ (1997), 97 JTS 393, pág. 400. Véase, además, Soto v. Rivera, supra. La sentencia sumaria sólo debe concederse cuando no hay una genuina controversia sobre los hechos materiales y el tribunal se convence que tiene ante sí la verdad de todos los hechos pertinentes. Cualquier duda sobre la existencia de una controversia sobre los hechos materiales, debe resolverse contra la

parte promovente.  Audiovisual Lang. v. Sist. Est. Natal Hns., supra. Así pues, tomando en consideración que la sentencia sumaria es un remedio de carácter discrecional, **"[e]l sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido proceso de ley."**  (Enfasis nuestro.)  Roig Com. Bank v. Rosario Cirino, 126 D.P.R. 613, 617 (1990).

A tenor con los principios esbozados, pasemos ahora a evaluar la determinación del Tribunal de Circuito.

Como ya expresáramos, la demanda presentada en este caso fue dividida en cuatro causas de acción.  Los recurridos presentaron a su vez, una Moción de Desestimación y/o Sentencia Sumaria acompañada de una serie de documentos para refutar algunas de las alegaciones de la señora Córdova Ramos.  Después de evaluar los documentos que acompañó la parte recurrida, el Tribunal de Circuito determinó lo siguiente:

En cuanto a la causa de acción basada en el alegado despido injustificado, determinó que ésta sólo procedía contra las recurridas Caribbean y Metro ya que eran las únicas patronas de la señora Córdova Ramos.  Procedía, pues, en derecho dictar sentencia sumaria desestimatoria en cuanto a los demás recurridos; el señor Larín Herrera y la licenciada Fernández Chaves.

De los documentos que obran en autos, en específico de la declaración jurada del señor Larín Herrera y la carta de despido de la señora Córdova Ramos, de 26 de agosto de 1996, se desprende con razonable certeza que, en efecto, la señora Córdova Ramos fue contratada sólo por las compañías Caribbean y Metro y que éstas, a su vez, eran sus únicas patronas.  El señor Larín Herrera figura como presidente de la Junta de Directores de dichas corporaciones.  De los documentos presentados no surge que éste haya sido patrono de la demandante peticionaria.  En virtud de la legislación laboral vigente,[14]

---

[14]    Véanse: Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. sec. 185 et seq.; Ley Núm. 96 de 26 de junio de 1956, según enmendada, 29 L.P.R.A. sec. 245 et seq.

la cual sólo le fija responsabilidad al patrono del empleado, procedía desestimar la acción de despido injustificado instada contra el señor Larín Herrera.[15]   Esta acción tampoco procedía contra la licenciada Fernández Chaves, ya que ésta era sólo la asesora legal de una de las compañías.

En cuanto a la acción presentada por la demandante peticionaria mediante la cual alegó haber sido despedida ilegalmente por defender sus derechos, ésta también surge al amparo de los remedios que ofrece la Ley Núm. 80, supra, y, por lo tanto, procede en contra del patrono exclusivamente.   Como correctamente determinó el Tribunal de Circuito, dicha acción debe consolidarse con la despido injustificado, y desestimada en cuanto al señor Larín Herrera y la licenciada Fernández Chaves.

En lo que respecta a la acción de libelo en contra de la licenciada Fernández Chaves y el señor Larín Herrera, y a la acción de daños y perjuicios presentada contra todos los recurridos, el análisis que debemos hacer es el que corresponde a una moción de desestimación, ya que no se presentaron documentos para avalar todas las alegaciones materiales con respecto a esta causa de acción.

Es harto conocido en nuestro ordenamiento procesal moderno que las alegaciones hechas en una demanda deberán ser sucintas y sencillas. Rivera v. Insular Wire Products Corp., Op. de 24 de mayo de 1996, 140 D.P.R.____ (1996), 96 JTS 76, pág. 1172. Estas tienen como fin primordial el bosquejar a grandes rasgos las reclamaciones de forma tal que el demandado quede informado de la naturaleza general de las contenciones en su contra y pueda comparecer a defenderse si así lo

---

[15]   Cabe señalar que nada hay en las alegaciones ni en los documentos presentados, que remotamente sugiera que estamos ante un caso donde proceda descorrer el velo corporativo.  Sabido es que el peso de la prueba, para descorrer el velo corporativo, recae en la parte que propone la imposición de responsabilidad individual a los accionistas y corresponde al tribunal luego de apreciar la prueba, si procede el levantamiento del velo corporativo.  El mero hecho de que una persona sea el único accionista de una corporación no autoriza la imposición de responsabilidad individual. D.A.C.o. v. Alturas Fl. Dev. Corp. y otro, 132 D.P.R. 905, 924 (1993).  Véanse, además; Fleming v. Toa Alta Development Corp., 96 D.P.R. 240, 243 (1968); Sugar Corp. v. Junta Azucarera, 88 D.P.R. 43, 56 (1963); J.E. Candal &Co. v. Rivera, 86 D.P.R. 508, 512-513 (1962).

desea.  <u>Ortiz Díaz</u> v. <u>R.& R. Motors Sales Corp.</u>, 131 D.P.R. 829, 836 (1992), <u>Agosto</u> v. <u>Mun. de Río Grande</u>, Op. de 20 de mayo de 1997, 143 D.P.R.___ (1997), 97 JTS 69, pág. 1014. Véase, además, <u>Meléndez</u> v. <u>El Vocero de Puerto Rico</u>, Op. de 24 de noviembre de 1997, 144 D.P.R.___ (1997), 97 JTS 139, pág. 300.[16]

Al considerar una moción para desestimar una demanda por insuficiencia de las alegaciones, hay que examinar los hechos alegados en la demanda de la manera más favorable a la solicitud del demandante. <u>Agosto</u> v. <u>Mun. de Río Grande</u>, supra. Los tribunales están obligados a dar por ciertas todas la alegaciones fácticas de la demanda. El promovente de la moción de desestimación tiene que demostrar que la demanda no expone una reclamación que justifique la concesión de un remedio. Más importante aún, <u>la demanda no debe ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene remedio a derecho alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación</u>. <u>Pressure Vessels P.R.</u> v. <u>Empire Gas P.R.</u>, 137 D.P.R. 497, 505 (1994).[17]

Así pues, para poder determinar si se justificaba la desestimación de la demanda en cuanto a la reclamación por libelo en contra de la licenciada Fernández Chaves y el señor Larín Herrera y la acción de daños y perjuicios en contra todos los recurridos, es necesario examinar cada una de éstas a la luz de los preceptos antes expuestos.

El Tribunal de Circuito resolvió que no se configuró el libelo ya que el incidente acontecido **no fue publicado a tercera persona**. Añadió que las alegaciones de difamación sólo podrían esgrimirse contra la

---

[16]    Sobre este particular en <u>Conley</u> v. <u>Gibson</u>, 355 U.S. 41, 47-48 (1957), el Tribunal Supremo Federal expresó:

> ...the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he base his claim.  To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rest. ...

[17]    Véase, además, <u>Hospital</u> v. <u>Rex Hospital Trustees</u>, 425 U.S. 738, 746 (1996).  En este caso el Tribunal Supremo Federal resolvió, que: "... 'a complaint should not be dismissed for failure to state a

recurrida Fernández Chaves, ya que nada había en autos de lo cual se pudiera inferir que algún otro de los recurridos efectuara manifestaciones en contra de la señora Córdova Ramos.

La Sec. 2 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 3141, en lo aquí pertinente, define el concepto libelo como:

> ...**la difamación maliciosa que públicamente se hace en contra de una persona, por escrito, impreso, signo, retrato, figura, efigie u otro medio mecánico de publicación**, tendente a exponer a dicha persona al odio del pueblo o a su desprecio, o a privarle del beneficio de la confianza pública y trato social, o a perjudicarle en sus negocios; o de otro modo desacreditarle, menospreciarle o deshonrarle, o cualquiera difamación maliciosa publicada, como antes se ha dicho, con la intención de denigrar o deprimir la memoria de un muerto y desacreditar o provocar a los parientes y amigos sobrevivientes. (Enfasis nuestro.)

La disposición transcrita claramente establece que para que prospere una reclamación por libelo, la parte perjudicada tiene que establecer prima facie que las expresiones difamatorias fueron comunicadas a terceras personas por algún medio mecánico de publicación.

Cónsono con lo anterior, también hemos resuelto que una acción de libelo puede ser desestimada, por insuficiente, si de las alegaciones no surge el elemento de publicación. Véase, Acevedo v. Western Digital Caribe, Inc., Op. de 21 de marzo de 1996, 140 D.P.R.___ (1996), 96 JTS 42, pág. 879.

De las alegaciones de la demanda surge que la licenciada Fernández Chaves entró de forma violenta en la recepción del edificio donde ubicaban las oficinas de la señora Córdova Ramos y acto seguido comenzó a vociferar improperios y palabras soeces, frente a todos los presentes y empleados.

Como podemos apreciar, de las alegaciones de la señora Córdova Ramos, no surge ni remotamente el elemento de publicación para poder inferir que se ha configurado una causa de acción por libelo. Es de

---

claim <u>unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim</u>

notar que las alegada expresiones desafortunadas no fueron comunicadas a terceras personas mediante algún medio mecánico de publicación, según requiere la Sec. 2 del Código de Enjuiciamiento Civil, supra. En virtud de ello es forzoso concluir que no se configuró una reclamación por libelo contra la licenciada Fernández Chaves ni contra el señor Larín Herrera.

No obstante lo anterior, atendiendo de la manera más favorable las alegaciones de da la demanda y ante la ausencia del requisito de publicación, las alegadas expresiones de la licenciada Fernández Chaves, podría dar base a una acción por calumnia.[18]

Finalmente, en lo que respecta a la acción de daños y perjuicios, el Tribunal de Circuito dispuso que sólo procedía contra la licenciada Fernández Chavez. Excluyó a las compañías por entender que el único remedio que tenía la señora Córdova Ramos era el que provee las leyes laborales. Sobre el señor Larín Herrera expresó que no procedía la acción de daños y perjuicios en su carácter personal ya que, como ejecutivo corporativo de ambas compañías, tanto él como Caribbean y Metro eran la misma persona.

Respecto a las compañías recurridas y a la licenciada Fernández Chaves no cabe duda de que el Tribunal de Circuito resolvió correctamente.

Ahora bien, en cuanto al señor Larín Herrera, la señora Córdova Ramos alegó que pasado el incidente de agresión, la actuación de éste fue una de "hostigar, amenazar, e interferir con la defensa de [sus] derechos". Al examinar estas alegaciones se puede inferir razonablemente que no son insuficientes para concluir que la señora Córdova Ramos no tiene remedio alguno en cuanto a la reclamación en contra del señor Larín Herrera. Así pues, ante la posibilidad de una

---

<u>which would entitle him to relief.</u>'" (Enfasis nuestro.)

[18] La calumnia es definida como:

la publicación falsa o ilegal, que no sea un libelo, y que impute a una persona la comisión de un hecho constitutivo de delito, o tienda directamente a perjudicarle

controversia bona fide en cuanto a si existe o no responsabilidad de parte de éste, no procede la desestimación de la acción. Véase, Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272, 279 (1990). Es menester puntualizar que bajo ninguna circunstancia estamos pasando juicio sobre la reclamación de daños y perjuicios contra el señor Larín Herrera.

## VII

Por los fundamentos antes expuestos, contrario a lo resuelto por la mayoría, expediríamos el recurso presentado a los únicos efectos de modificar la sentencia emitida por el Tribunal de Circuito de Apelaciones para que esta refleje lo aquí expuesto y devolveríamos el caso al foro de instancia para que continúe con los procedimientos.

MIRIAM NAVEIRA DE RODÓN
Juez Asociada

---

con relación a su oficina, profesión, comercio o negocios, o que, como consecuencia natural, le cause daños reales y efectivos. 32 L.P.R.A. sec. 3143