Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V ESPECIAL

| | | |
|---|---|---|
| JUAN APONTE COLÓN Y OTROS<br><br>Parte Querellante-Apelante<br><br>v.<br><br>EMPRESAS DÍAZ, INC. Y OTROS<br><br>Parte Querellada-Apelada | KLAN202300890 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: SJ2017CV01935 (502)<br><br>Sobre: Despido Injustificado y Salarios; Acción Representativa (Procedimiento Sumario)<br><br>consolidado con: |
| ARTURO DÍAZ IRIZARRY<br><br>Parte Querellante-Apelante<br><br>v.<br><br>EMPRESAS DÍAZ, INC. Y OTROS<br><br>Parte Querellada-Apelada | | Caso Núm.: SJ2018CV01811 (502)<br><br>Sobre: Despido Injustificado y Salarios; Acción Representativa (Procedimiento Sumario) |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Santiago Calderón y la Jueza Álvarez Esnard[1]

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de enero de 2024.

Comparecen ante nos el señor Juan Aponte Colón y otros (en conjunto, apelantes o empleados) mediante recurso de *Apelación* y solicitan la revisión de la *Sentencia Parcial* emitida el 22 de septiembre de 2023, notificada el 25 de septiembre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro primario). Mediante el aludido dictamen, el TPI archivó con perjuicio

---

[1] El caso de epígrafe se asigna a este Panel Especial conforme a la Orden Administrativa OAJP-2021-086, emitida el 4 de enero de 2021, con efectividad del 10 de enero de 2022.

Número Identificador
SEN2024_____

las reclamaciones instadas por 36 coquerellantes, sin especial imposición de costas, gastos y honorarios de abogados.

Por los fundamentos que exponemos a continuación, **confirmamos** el dictamen apelado.

## I.

El 11 de septiembre de 2017, cuarenta y cinco (45) personas presentaron *Querella*[2] bajo el procedimiento sumario dispuesto por la Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA sec. 3118, *et seq.* (Ley Núm. 2-1961) contra Empresas Díaz Inc., Betteroads Asphalt LLC h/n/c Betteroads Asphalt Corporation, Betteroads Asphalt II LLC, Betterecycling Corporation, Petroleum Emulsion Manufacturing Corporation (PEMCO), Puerto Rico Asphalt LLC, Asphalt Quality Services LLC, Ready Asphalt LLC, Puerto Rico Gas & Petroleum LLC y Hopi Copters, Inc. (en conjunto, apeladas o empresas). Los apelantes solicitaron una suma conjunta no menor de $2,447,036.67 en concepto de indemnización por despido injustificado, más intereses; una suma conjunta no menor de $874,996.82 en concepto de indemnización por los salarios devengados no remunerados, bonos de navidad, sumas descontadas de sus salarios, el pago de horas extra, penalidades e intereses; y una suma no menor al 25% de la indemnización en concepto de honorarios de abogados.

El 1 de diciembre de 2017, las apeladas presentaron un escrito intitulado *Moción informativa sobre procedimiento de quiebra y en solicitud de paralización de los procedimientos*[3]. Del mismo surge que se presentó una petición de quiebra involuntaria contra Betteroads Asphalt LLC y Betterecycling Corporation en el Tribunal de Distrito de Estados Unidos en Puerto Rico, bajo la legislación

---

[2] Apéndice del recurso de apelación, págs. 1-61.
[3] Véase Entrada Núm. 3 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

federal pertinente. En virtud de lo anterior, el 12 de diciembre de 2017, notificada el 14 de diciembre de 2017, el TPI emitió una *Sentencia Parcial*[4] en la que decretó la paralización de los procedimientos en el presente caso contra Betteroads Asphalt LLC y Betterecycling Corporation, exclusivamente.

Entre el 1 de diciembre de 2017 y el 7 de mayo de 2018, las apeladas presentaron sus respectivas contestaciones a querella. En lo pertinente, PEMCO alegó afirmativamente en su *Contestación a Querella*, que el despido fue justificado como resultado de un cierre parcial de operaciones y/o eliminación de puestos por reorganización.

El 29 de septiembre de 2021, Betteroads Asphalt LLC, Betterecycling Corporation y varios empleados presentaron unos acuerdos transaccionales ante el Tribunal de Quiebras[5]. El 25 de octubre de 2021, el Tribunal de Quiebras aprobó los acuerdos transaccionales de algunos de los empleados querellantes con Betteroads Asphalt LLC y Betterecycling Corporation que habían sido presentados en las quiebras involuntarias.

Luego de varios trámites procesales, el 11 de noviembre de 2021, Betteroads Asphalt II, Petroleum Emulsion Manufacturing Corporation h/n/c PEMCO, Empresas Díaz y HOPI Copters Inc., presentaron *Moción de Sentencia Sumaria Parcial con relación a los ex empleados de Petroleum Emulsión Manufacturing Corporation h/n/c PEMCO*[6]. En esta, solicitaron al foro primario que dictara sentencia sumaria parcial a su favor desestimando las reclamaciones de despido injustificado presentadas en su contra por Manuel Rosa Tirado, Evelyn Rodríguez Monzón, Luz Esquilín Carmona y Alberto Rivera Colón.

---

[4] Véase Entrada Núm. 19 del SUMAC.
[5] Apéndice del recurso de apelación, págs. 78-93.
[6] Apéndice del recurso de apelación, págs. 94-121.

En esa misma fecha, Puerto Rico Asphalt, Puerto Rico Gas and Petroleum, Asphalt Quality Services, Ready Asphalt, Betteroads Asphalt II, Petroleum Emulsion Manufacturing Corporation h/n/c PEMCO, Empresas Díaz y HOPI Copters Inc., presentaron *Moción de Sentencia Sumaria Parcial en cuanto a 40 Querellantes*[7]. En esencia, solicitaron que se desestimaran las reclamaciones de despido injustificado en las que cuarenta (40) querellantes alegaron que eran empleados de Betteroads Asphalt II y Betterecycling Corporation. Las apeladas argumentaron que aplicaba la doctrina de impedimento colateral por sentencia y *res judicata* respecto a las quiebras involuntarias de Betteroads Asphalt II y Betterecycling Corporation y, en la alternativa, solicitaron la desestimación con perjuicio de las querellas presentadas por los cuarenta (40) empleados ya que estos suscribieron acuerdos transaccionales que fueron aprobados por el Tribunal de Quiebras.

Por su parte, el 13 de diciembre de 2021, Luz Selenia Esquilin Carmona, Alberto Rivera Colón, Evelyn Mercedes Rodríguez Monzón y Manuel Antonio Rosa Tirado comparecieron mediante *Moción en Oposición a Sentencia Sumaria y Objetando la Enmienda de las Alegaciones*[8]. En su escrito, alegaron que las empresas intentan enmendar su contestación a la querella a través de su moción de sentencia sumaria parcial para corregir deficiencias en sus alegaciones. Señalaron que, inicialmente las empresas adujeron que los despidos se debieron a un cierre parcial de operaciones y/o eliminación de puestos por reorganización; pero, posteriormente afirmaron que el cierre de operaciones fue total.

En esta misma fecha, los apelantes presentaron *Moción en Oposición a Sentencia Sumaria y Honorarios de Abogados*[9].

---

[7] Apéndice del recurso de apelación, págs. 122-140.
[8] Apéndice del recurso de apelación, págs. 141-149.
[9] Apéndice del recurso de apelación, págs. 150-156.

Arguyeron que el acuerdo transaccional al cual llegaron las empresas y algunos de los apelantes no incluyó al señor Wilfredo Arroyo Velázquez, por lo que se oponen a que se desestime su causa de acción. Además, reclamaron a base de la doctrina de *quantum meruit* los honorarios de los abogados que participaron en el proceso que culminó con la estipulación. Sostuvieron que los abogados realizaron trabajo legal a partir de septiembre de 2017 y el patrono es responsable de este pago.

Así las cosas, el 7 de octubre de 2022, notificada el 13 de octubre de 2022, el TPI emitió *Resolución*[10] en la que declaró No Ha Lugar las solicitudes de sentencia sumaria parcial. Dicho foro, concluyó que:

> En el presente caso existen controversias de hechos, según previamente identificadas, que entrañan el dirimir credibilidad. Por ejemplo, la operación de PEMCO y la contratación de empleados con posterioridad a los despidos de los coquerellantes para ocupar puestos análogos. Más aún, es menester adjudicar si BA, BC y PEMCO, funcionaban -de facto- como una sola empresa, es decir, como un solo patrono.
> Ante estas circunstancias, es necesaria la celebración de un juicio en su fondo donde el Tribunal tenga la oportunidad de aquilatar la evidencia que en su día se presente. En fin, resulta meritorio que ambas partes tengan su día en corte, presenten prueba testifical a su favor y tengan la oportunidad de contrainterrogar a los testigos de las partes adversas.

En esta misma fecha se celebró ante el TPI una Vista de Conferencia con Antelación a Juicio, en la que, luego de escuchadas y evaluadas las posiciones de ambas partes, el Tribunal determinó lo siguiente:

> En cuanto a la resolución emitida, se enmendará la misma a los fines de archivar las reclamaciones de esos 40 querellantes. La licenciada Dapena Rodríguez se ofrece a presentar el correspondiente proyecto[11].

Luego de varios trámites procesales, el 22 de septiembre de 2023, notificada el 25 de septiembre de 2023, el TPI emitió una *Sentencia Parcial*[12] en la que, como resultado de la estipulación ante

---

[10] Apéndice del recurso de apelación, págs. 157-173.
[11] Véase Entrada Núm. 205 del SUMAC.
[12] Apéndice del recurso de apelación, págs. 177-178.

el Tribunal de Quiebras, ordenó el archivo con perjuicio de las reclamaciones de treinta y seis (36) coquerellantes[13], sin especial imposición de costas, gastos y honorarios de abogados.

Inconformes, el 5 de octubre de 2023, los apelantes comparecen ante nos mediante recurso de *Apelación* en el que señalan al TPI la comisión de los siguientes errores:

> Erró el Honorable Tribunal de Primera Instancia al archivar con perjuicio las reclamaciones de 36 co-querellantes sin especial imposición de costas, gastos y **honorarios de abogados**.

> Erró el Honorable Tribunal de Primera Instancia al permitir que el Patrono enmendara las alegaciones de la Contestación a la Querella.

El 10 de noviembre de 2023, las apeladas presentaron *Alegato de las Apeladas en Oposición a la Apelación*. Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

### -A-

El Tribunal Supremo de Puerto Rico ha reiterado que los tribunales estamos llamados a ser celosos guardianes de nuestra jurisdicción[14]. Por ello, antes de entrar en los méritos de una controversia, es necesario que nos aseguremos que poseemos

---

[13] **A. Empleados de Betteroads Asphalt II que suscribieron la estipulación:** 1) Juan Aponte Colón; (2) Jesús Manuel Arroyo García; (3) María Elena Batista Duarte; (4) Pablo Calderón Santana; (5) José Antonio Ceballos Cirino; (6) Ivelisse Colón Rodríguez; (7) María de los Ángeles Cordero Vélez; (8) Mario Cruz González; (9) Jessica Vanessa Custodio López; (10) Zaida del Toro Figueroa; (11) Wilfredo José Díaz Ruiz; (12) Ángel Luis Esquilín Latorre; (13) Jaime Estrada Delgado; (14) Grizella Feliciano Negrón; (15) Aleida Edmee Guzmán Ramos; (16) Alexis Joel Heredia Díaz; (17) Enid Llorens Rodríguez; (18) Ramón Caonabo Menéndez Pérez; (19) Rafael Montalvo Carril; (20) Blanca Ortiz Marrero; (21) José Omar Rivera Meléndez; (22) Marcelino Rivera Pizarro; (23) Yanira Rivera Ramos; (24) Ángel David Román Juarbe; (25) Luis Alberto Santiago Colón; (26) Ana Luisa Sepúlveda Rosado; (27) Braulio Torres Pellot y (28) Ruth Melba Valentín García; **B. Empleados de Betterecycling Corporation que suscribieron la estipulación:** (29) Eva María Aquino Quiles; (30) Melissa Bermúdez Bernier; (31) José Antonio Ceballos Cirino; (32) Willie Figueroa Rodríguez; (33) Pedro Hernández Jiménez; (34) Wanda Ivette Lebrón González; (35) Luis Javier Ramírez Martínez; y (36) Antonio L. Rivera Rivera.

[14] *Lozada Sánchez et al. v. JCA*, 184 DPR 898, 994 (2012); *Constructora Estelar v. Aut. Edif. Púb.*, 183 DPR 1, 22 (2011); *S.L.G. Szendrey Ramos v. F. Castillo*, 169 DPR 873, 882 (2007).

jurisdicción para actuar, ya que los asuntos jurisdiccionales son materia privilegiada y deben ser resueltos en primer lugar[15].

El Tribunal Supremo define el concepto de "jurisdicción" como "el poder o autoridad de un tribunal para considerar y decidir casos o controversias"[16]. Las cuestiones jurisdiccionales son privilegiadas, por lo que deben ser resueltas con preferencia[17]. Si el tribunal carece de jurisdicción, el único curso de acción posible es así declararlo, sin necesidad de discutir los méritos del recurso en cuestión[18]. De no hacerlo, la determinación sería nula, por lo que carecería de eficacia[19]. La Regla 83 del Reglamento del Tribunal de Apelaciones autoriza a este Tribunal para que, a iniciativa propia o a solicitud de parte, desestime un recurso por falta de jurisdicción[20].

Por otro lado, el Tribunal Supremo de Puerto Rico ha resuelto reiteradamente que los reglamentos que disponen sobre la forma y presentación de los recursos ante foros apelativos deben observarse rigurosamente[21]. El propósito de estas normas reglamentarias es facilitar el proceso de revisión apelativa y colocar al tribunal en posición de decidir correctamente los casos[22]. Empero, nuestro Máximo Foro ha rechazado la interpretación y aplicación restrictiva de todo requisito reglamentario cuando ello derrote el interés de que los casos se vean en los méritos[23]. Sin embargo, esto no implica que una parte posee una licencia para soslayar de manera injustificada el cumplimiento con nuestro Reglamento[24].

---

[15] *Cruz Parrilla v. Dpto. Vivienda*, 184 DPR 393, 403 (2012); *García v. Hormigonera Mayagüezana*, 172 DPR 1, 7 (2007).

[16] *SLG Solá-Moreno v. Bengoa Becerra*, 182 DPR 675, 682 (2011); *Gearheart v. Haskell*, 87 DPR 57, 61 (1963).

[17] *González v. Mayagüez Resort & Casino*, 176 DPR 848, 856 (2009).

[18] *Íd.*

[19] *Morán v. Martí*, 165 DPR 356, 364 (2005).

[20] 4 LPRA Ap. XXII-B, R. 83.

[21] *Hernández Maldonado v. Taco Maker*, 181 DPR 281, 290 (2011); *Pueblo v. Rivera Toro*, 173 DPR 137, 145 (2008); *Lugo v. Suárez*, 165 DPR 729, 737 (2005); *Pellot v. Avon*, 160 DPR 125, 134-135 (2003); *Febles v. Romar*, 159 DPR 714, 722 (2003); *Córdova v. Larín*, 151 DPR 192, 195 (2000); *Arriaga v. F.S.E.*, 145 DPR 122, 129-130 (1998).

[22] *Soto Pino v. Uno Radio Group*, 189 DPR 84, 90 (2013).

[23] *García Morales v. Mercado Rosario*, 190 DPR 632 (2014); *Pérez Soto v. Cantera Pérez, Inc.*, 188 DPR 98 (2013); *Pueblo v. Santana Vélez,* 168 DPR 30 (2006).

[24] *Arriaga v. F.S.E., supra.*

Ante la severidad de esta sanción, en *Román et als. v. Román et als.*[25], el Tribunal Supremo estableció unos criterios guías que nos permiten ponderar si realmente el quebrantamiento de las disposiciones reglamentarias constituye un impedimento real y meritorio para que se considere el caso en los méritos. Por lo tanto, solo si se cumple con dichos parámetros procederá la desestimación[26].

Así pues, antes de desestimar un recurso debemos analizar los siguientes criterios[27], a saber: (1) cerciorarse primero que el incumplimiento haya provocado un impedimento real y meritorio para que el tribunal pueda atender el caso en los méritos, y (2) usar medidas intermedias menos drásticas dirigidas al trámite y perfeccionamiento diligente de los recursos de apelación. El Tribunal Supremo expresó que al evaluar estos criterios "se concilian el deber de las partes de cumplir con los reglamentos procesales y el derecho estatutario de todo ciudadano a que su caso sea revisado por un panel colegiado de tres jueces"[28].

Ante esto, no cabe duda de que la parte compareciente tiene que perfeccionar su recurso conforme a los preceptos de ley vigentes y de nuestro reglamento. De lo contrario, este Tribunal no estará en posición de revisar el dictamen recurrido[29]. Por lo tanto, para adquirir jurisdicción sobre un asunto es preciso que el recurso presentado ante este Tribunal quede perfeccionado. Ello es imprescindible, puesto que al carecer de jurisdicción sobre un recurso únicamente podemos así declararlo y proceder con su desestimación[30]. De conformidad con ello, toda persona que presente un recurso de apelación ante nosotros tiene la

---

[25] *Román et als. v. Román et als.,* 158 DPR 163, 167 (2002).
[26] *Íd.*
[27] *Íd.*, págs. 167-168.
[28] *Íd.*
[29] *Morán v. Martí, supra.*
[30] *González v. Mayagüez Resort & Casino, supra,* pág. 855.

responsabilidad de cumplir con todos los términos para presentar su escrito, los términos para notificar a las partes apeladas y con los requisitos de contenido del recurso.

**-B-**

En nuestro ordenamiento jurídico, la concesión de honorarios de abogado puede ser objeto de un contrato de servicios profesionales. El contrato más común al respecto es el que otorga un abogado y su cliente para la representación legal de este último. En esta relación contractual, sin embargo, entran en juego ciertas disposiciones éticas que regulan y establecen unos límites legales a las cuantías susceptibles de ser cobradas por el abogado[31]. Es decir, la autonomía de la voluntad que rige las relaciones contractuales en nuestro ordenamiento, en el caso de los contratos de servicios legales, está supeditada a consideraciones éticas que son intrínsecas a la profesión legal[32]. En específico, las establecidas en el Canon 24 de Ética Profesional, 4 LPRA Ap. IX, C. 24.

En ausencia de contrato, el cómputo de la cuantía de honorarios de abogados susceptibles de ser cobrada puede ser calculada a base del criterio de *quantum meruit*.

El precepto legal *quantum meruit* significa "tanto como se merece".[33] Esta máxima reconoce el derecho que tiene toda persona a reclamar el valor razonable de los servicios que ha prestado[34]. En nuestro ordenamiento jurídico, la acción para reclamar el valor razonable de servicios a base de un *quantum meruit* emanaba del Art. 1473 del Código Civil del 1930, el cual disponía en parte que:

> En cuanto a los servicios profesionales, se estará, para la remuneración de los mismos, a lo convenido entre las partes; cuando no hubiere convenio y surgieran diferencias, la parte con derecho a la remuneración podrá reclamar y obtener en

---

[31] *Nasser Rizek v. Hernández*, 123 DPR 360, 370 (1989).

[32] *In re Acevedo Álvarez*, 178 DPR 685, 690 (2010); véase, además, el Canon 24 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 24.

[33] I. Rivera García, *Diccionario de Términos Jurídicos*, 3ra ed. rev., San Juan, Ed. Lexis, 2000, pág. 395.

[34] *Pérez v. Col. Cirujanos Dentistas de P.R.*, 131 DPR 545, 557 (1992); *Ex parte Capó y Rivera*, 59 DPR 899 (1942); *Ruiz de Val v. Morales*, 43 DPR 283 (1932).

juicio de la otra parte, ante cualquier corte con jurisdicción competente, el importe razonable de dichos servicios[35].

De una lectura del precitado artículo, se puede colegir que proveía un remedio en restitución basado en elementos de justicia. Este procuraba evitar el enriquecimiento injusto de quien recibe un servicio permitiéndole al que lo presta la posibilidad de reclamar su valor razonable cuando no se hubiera pactado un precio cierto[36].

Sobre el particular, nuestro más alto foro explicó, además, que, en este tipo de acción de cobro de dinero por servicios prestados, el peso de la prueba recae sobre el abogado. Por tal razón, le corresponde al letrado presentar prueba, sea directa o circunstancial, sobre: (1) las gestiones profesionales que realizó para beneficio de su cliente; (2) las horas o fracción de tiempo que le dedicó a cada una de dichas gestiones, y, (3) el valor razonable de las horas dedicadas[37].

Una vez el foro primario evalúa la prueba, tiene el deber de fijar los honorarios a los que tenga derecho el reclamante y evaluar su razonabilidad tomando en consideración, entre otros, los factores enumerados en el Canon 24 del Código de Ética Profesional, *supra,* a saber:

(1) El tiempo y trabajo requeridos, la novedad y dificultad de las cuestiones envueltas y la habilidad que requiere conducir propiamente el caso;
(2) si el aceptar la representación del caso en cuestión ha de impedir al abogado que se haga cargo de otros casos que probablemente han de surgir del mismo asunto, y en los cuales existe una razonable expectativa de que de lo contrario sus servicios serán solicitados o que tal representación implique la pérdida de otros asuntos extraños al caso en cuestión o el antagonismo con otros clientes;
(3) los honorarios que acostumbradamente se cobran en el distrito judicial por servicios similares;
(4) la cuantía envuelta en el litigio y los beneficios que ha de derivar el cliente de los servicios del abogado;
(5) la contingencia o certeza de la compensación, y

---

[35] 31 LPRA ant. sec. 4111. Cabe destacar que el Código Civil de Puerto Rico de 1930, vigente al momento en que surgieron los hechos del presente caso, fue derogado y sustituido mediante la Ley Núm. 55-2020, aprobada el 1 de junio de 2020, conocida como Código Civil de Puerto Rico de 2020.
[36] *Cruz Pérez v. Roldan Rodríguez,* 206 DPR 261, 272 (2021); *Blanco Matos v. Colón Mulero,* 200 DPR 398, 413 (2018).
[37] *Íd.*

(6)    la naturaleza de la gestión profesional, si es puramente
       casual o para un cliente constante.

**III.**

En su primer señalamiento de error, los apelantes arguyen que erró el TPI al no conceder honorarios de abogados por el mero hecho de que la reclamación entre algunos coquerellantes y las empresas Betteroads Asphalt LLC y Betterecycling Corporation se finiquitó por un acuerdo transaccional. Aducen que en el presente caso debieron concederse los respectivos honorarios de abogado a base de la doctrina de *quantum meruit.*

Es preciso señalar que, en el caso de autos, el TPI emitió una *Sentencia Parcial*[38] en la que decretó la paralización de los procedimientos contra Betteroads Asphalt LLC y Betterecycling Corporation, exclusivamente, debido a una petición de quiebra involuntaria en el Tribunal de Quiebras. Además, las referidas empresas, junto a algunos coquerellantes, presentaron acuerdos transaccionales ante el Tribunal de Quiebras, los cuales fueron aprobados el 25 de octubre de 2021. Mientras que, el 13 de diciembre de 2021, los apelantes presentaron ante el TPI la *Moción en Oposición a Sentencia Sumaria y Honorarios de Abogados* en la que, entre otras cosas, reclamaron los honorarios de los abogados que participaron en el proceso que culminó con la estipulación ante el Tribunal de Quiebras.

Ante este escenario, ni el Tribunal de Primera Instancia ni este Tribunal de Apelaciones poseen jurisdicción sobre las empresas Betteroads Asphalt LLC y Betterecycling Corporation, de modo que se pueda ordenar en esta etapa de los procedimientos el pago de los honorarios de abogados reclamados. En consecuencia, actuó correctamente el foro primario al archivar con perjuicio las

---

[38] Véase Entrada Núm. 19 del SUMAC.

reclamaciones de 36 coquerellantes "sin especial imposición de costas, gastos y honorarios de abogado"[39].

Por otro lado, en su segundo señalamiento de error, los apelantes alegan que erró el TPI al permitir que las empresas enmendaran las alegaciones a la contestación a querella. Particularmente, adujeron que en las mociones de sentencia sumaria las empresas incorrectamente habían ampliado y enmendado sus alegaciones de la contestación a la querella en violación a la Ley Núm. 2-1961 y su jurisprudencia.

Conforme al tracto procesal del presente caso, el 7 de octubre de 2022, notificada el 13 de octubre de 2022, el TPI emitió una *Resolución* mediante la cual atendió las mociones de sentencia sumaria junto a sus respectivas oposiciones. Del expediente ante nos, no surge que los apelantes hayan recurrido oportunamente de dicho dictamen. Sin embargo, a través del presente recurso, los apelantes pretenden que este Tribunal de Apelaciones revise un asunto que no fue atendido dentro de la *Sentencia Parcial* que nos ocupa. A la luz del derecho antes expresado y las faltas antes reseñadas, resulta forzoso concluir que estamos impedidos de atender el segundo señalamiento de error de los apelantes para brindarles algún remedio.

**IV.**

Por los fundamentos que anteceden, **confirmamos** el dictamen apelado.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[39] Apéndice del recurso de apelación, pág. 178.