CORPORACIÓN DE RENOVACIÓN URBANA Y VIVIENDA DE PUERTO RICO, demandante y recurrida, *v.* JOSÉ PEÑA UBILES, demandado y recurrente.

*Número:* CE-66-8    *Resuelto:* 21 de septiembre de 1967

*José Peña Ubiles,* por su propio derecho y *Nicanor Vázquez Torres,* abogado del peticionario-recurrente; *José R. Vélez Torres, José M. Cabrera Deetjen* y *Josefina Ruiz Carrillo,* abogados de la recurrida; *Arturo Aponte Parés,* como *amicus curiae.*

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

El día 1ro. de abril de 1965, la Corporación de Renovación Urbana y Vivienda de Puerto Rico, una corporación

pública creada por la Ley Núm. 88 de 22 de junio de 1957, según enmendada por la Ley Núm. 109 de 26 de junio de 1958, como arrendadora, y don José Peña Ubiles, como arrendatario, celebraron un contrato de arrendamiento sobre una vivienda en la Urbanización Padre Rivera de Humacao. En dicho contrato se estableció el siguiente pacto: "Este contrato está en vigencia por el período inicial comprendido entre el 1ro. de abril de 1965 y el 30 de abril de 1965, ambas fechas inclusive, y desde esta última fecha, será prorrogable por períodos de tiempo sucesivos de un mes hasta que la arrendadora, previo aviso al arrendatario o a su familia dado con 15 días de anticipación, decida no prorrogarlo." Si hemos entendido bien la posición de la arrendadora, la Corporación de Renovación Urbana y Vivienda de Puerto Rico entiende, que aunque no medie causa o violación de contrato que así lo justificare, que la arrendadora puede dar por terminado el contrato, a simple voluntad de ella, por el simple envío de una notificación a tal efecto quince días antes de proceder al desalojo inmediato del inquilino.

La primera Sala que intervino en la cuestión, la ilustrada Sala de Humacao del Tribunal de Distrito de Puerto Rico, por voz de su Honorable Juez R. Adolfo de Castro, denegó el desahucio solicitado por entender que el ejercicio de tal derecho contractual era contrario a la moral y al orden público, razonando su negativa de la siguiente manera: "Aunque el Gobierno representado por la CRUV (demandante) no está en el negocio de especulación en el arrendamiento de viviendas y su creación fue determinada precisamente para combatir algunos de los males que afectan adversamente al problema de la vivienda en Puerto Rico, la política del Pueblo la obliga tal y como obliga a cualquier ciudadano. 'El hecho de que se trata de un contrato entre el Estado y una persona particular no debe considerarse como excepción. Como se resolvió en el caso de *Rodríguez* v. *Municipio*, 75 DPR 479 . . . (1953) cita precisa a la pág. 494:

"Cuando un Gobierno contrata con una persona particular, el contrato hay que interpretarlo como si se tratara de un contrato entre dos personas particulares." Sería abusivo, injusto, irrazonable y opresivo que en Puerto Rico se pudiera desahuciar a un ciudadano sin más causa que la voluntad del arrendador notificada con 15 días de antelación a la fecha fijada por él para el desalojo.' "

Al revocar la anterior sentencia, la segunda Sala que intervino en la cuestión, la ilustrada Sala de Humacao del Tribunal Superior de Puerto Rico, por voz de su Honorable Juez, razonó su revocación en los siguientes términos: "Por otro lado, es un principio general aceptado y consagrado por el Tribunal Supremo de Puerto Rico que en la aplicación de los principios relativos a los contratos, el Estado, actuando por sí o a través de una agencia o instrumentalidad no tiene más derechos, poderes y prerrogativas que un ciudadano particular. Y si en la esfera de la libre contratación entre los ciudadanos resultaría perfectamente válida una cláusula a virtud de la cual el arrendador puede solicitar el desalojo de la propiedad arrendada, previa la notificación a que alude la cláusula del contrato de arrendamiento en controversia, no vemos como puede alterarse la norma en el caso de autos meramente por que figure como arrendador el Estado o una de sus agencias o instrumentalidades. Tal interpretación resulta forzada desde cualquier punto de vista. Aún más. El Tribunal sentenciador no tuvo ante si prueba afirmativa alguna al efecto de que el demandado no pactara la condición resolutoria del contrato de su libre y espontánea voluntad. Sobre ese punto hubo ausencia total de prueba."

■ Cuando se trata de la interpretación de un contrato basta que conste en la prueba la presentación de dicho contrato o que se haga referencia al mismo al estudiar alguna cuestión de derecho relacionada con dicho contrato. Si bien la adhesión no es por sí una declaración de nulidad, es, por lo menos, una norma de interpretación de contrato que por

la reducción a un mínimo de la bilateralidad, nos obligue a restablecer el ánimo consensual a través de una interpretación del texto menos favorable a la parte que estuvo en posición de imponer la mayor cantidad de condiciones onerosas que demuestre el contrato.

■ Estamos conformes con el criterio sustentado por la primera Sala sentenciadora de Humacao que cualquier contrato que resulte contrario al propósito público por el cual se hizo y que deje a merced de una sola voluntad la terminación del mismo, independiente de la conducta jurídica que observe el obligado, es contrario a la Ley, la moral y al orden público.

Por esta razón no podemos estar de acuerdo con el criterio sustentado por la segunda Sala sentenciadora de Humacao que en virtud de un contrato puedan dejarse sin efecto las disposiciones de la Ley, de la moral o del orden público uniformemente establecido por la legislación, el decálogo consuetudinario y la sociedad políticamente organizada. Ninguna persona, y entre las personas a derecho sometidas está el Estado mismo, mediante un contrato, puede dejar sin efecto o modificar en tal forma que equivalga a anular su norma jurídica, ninguna ley, costumbre o los fines públicos del orden político. Lo mismo podríamos decir sobre la legislación. Las leyes no podrían convertir a un ser humano en un esclavo, o autorizar un contrato confiscatorio, ni alterar el fideicomiso público que constituye toda función del Estado, porque no lo permitiría el sentido luminoso de nuestro orden constitucional, diseñado todo para la protección de la dignidad del ser humano.

■ En este sentido, creemos de grande estímulo y generoso esclarecimiento las palabras del Juez Douglas de la Corte Suprema de los Estados Unidos, en un caso parecido a éste, en su opinión concurrente en el caso de *Thorpe* v. *Housing Authority*, 386 U.S. 670 (Per Curiam) (abril 17

de 1967) cita precisa a las págs. 676 y 678–679: "Bajo el razonamiento de la Corte Suprema de la Carolina del Norte, una Autoridad para un plan público de hogares, organizada bajo las leyes del Estado, y administrando un proyecto de viviendas financiado con fondos federales y del estado, compara con la posición de un dueño de propiedad privada quien puede dar por terminado un arrendamiento por cualquier causa o por ninguna causa . . . . Una y otra vez hemos insistido que: 'la naturaleza y la teoría de nuestras instituciones de gobierno, los principios sobre los cuales están supuestos a apoyarse . . . no intentan dejar resquicio alguno al juego y a la acción en un puro poder personal y arbitrario' [citas] y que la esencia del debido proceso de ley es la 'protección del individuo ante una acción arbitraria' [citas]. Cualquier sugestión en contrario 'sería una regresión a la filosofía de la posesión feudal'. Reich, *The New Property*, 73 Yale L.J. 733, 769. No dispone del caso sostener que un arrendador privado puede terminar un contrato cuando le plazca. Porque estamos tratando con un gobierno, y las actuaciones de un gobierno están siempre circunscritas por la Carta de Derechos y la Enmienda 14. 'El gobierno como arrendador sigue siendo un gobierno. No puede actuar arbitrariamente, porque, contrario a los arrendadores privados, está sujeto a los requisitos del debido proceso de ley. Cualquier actuación arbitraria está en contra del debido proceso de ley' [cita] . . . . Esto no significa que una autoridad para un plan público de viviendas esté indefensa contra su inquilino. Un inquilino puede ser desalojado si se demuestra que está destruyendo la propiedad, deteriorando las paredes, o perturbando a los otros inquilinos con una conducta desordenada y por un número de otras razones que puedan entorpecer la administración ventajosa del proyecto de viviendas. El desalojo por dichas razones pueden proteger la viabilidad del proyecto sin convertir al inquilino en un siervo que tiene

un hogar hasta que le plazca al administrador del proyecto o a la autoridad de hogares."

■ Examinado el contrato que nos ocupa, encontramos que se trata de un contrato—supuesto a durar toda la vida del inquilino y aun la de sus herederos, que es la correcta aspiración del arrendamiento protegido—que un mes después de firmado pierde toda su protección para el inquilino y lo deja a merced del Administrador de la Autoridad. Tal contrato resulta contrario al espíritu de protección económica y reparación social que le sirve de causa a la legislación que lo inspiró, es contrario a la Ley puesto que por el mero vencimiento ficticio impuesto por el arrendador anula la prórroga automática de que disfrutan los alquileres privados y es contrario a la moral puesto que trata de inmovilizar la voluntad jurídica del hombre dentro de una concepción pragmática de un estado ideal, concebido en abstracto, con la correspondiente merma en los valores humanos.

Por lo tanto, vistos los fines públicos del estatuto que autoriza el proyecto de viviendas, la ley y el concepto de la propiedad de nuestra Constitución y legislación civil, resolver debemos, que el vencimiento del término del contrato según el negocio jurídico a nosotros sometido, no puede ser causa de desalojo en Puerto Rico en ninguna acción posesoria ordinaria o especial.

*Por las razones expuestas debe revocarse la sentencia dictada por la Sala de Humacao del Tribunal Superior de Puerto Rico de fecha 17 de diciembre de 1965 en la causa civil núm. CS-65-1638 de dicha Sala y confirmarse la sentencia dictada por la Sala de Humacao del Tribunal de Distrito de Puerto Rico de fecha 20 de septiembre de 1965 en la causa civil núm. CD-65-128 de dicha Sala.*

Los Jueces Asociados Señores Blanco Lugo y Ramírez Bages disintieron.