Gilberto Gierbolini, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Las partes apelantes acuden ante nos y solicitan que revisemos la sentencia emitida por el Tribunal de Primera Instancia, Sub-sección de Distrito, Sala de San Juan, del 2 de julio de 1997. El archivo en autos de copia de la notificación de la misma fue el 16 de julio de 1997.
*965 Mediante dicha sentencia, el Tribunal desestimó con perjuicio la demanda presentada por el Demandante-Apelante contra la Cooperativa de Seguros de Vida de Puerto Rico, (COSVI) así como la demanda contra coparte que presentara contra dicha aseguradora la Cooperativa de Ahorro y Crédito de la Autoridad de Acueductos y Alcantarillados (Cooperativa).
Luego de analizar el expediente del Tribunal, por los fundamentos que exponemos a continuación, procede EXPEDIR el Auto y REVOCAR la Sentencia apelada.
I
Según surge de la Sentencia, el 15 de octubre de 1991 el Sr. Ramón Nieves Carrasquillo tomó un préstamo en la Cooperativa. Al así hacerlo, el aquí Demandante-Apelante, Sr. Armando Tapia Morales (Tapia) firmó como fiador en la transacción. El préstamo fue asegurado de forma que, de fallecer el señor Nieves Carrasquillo, quedaría saldo el balance adeudado del préstamo.
El señor Nieves Carrasquillo se jubiló de la Autoridad de Acueductos y Alcantarillados en el 1992. De esa fecha en adelante, el pago del préstamo era efectuado directamente a través de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura. Poco tiempo después, el 13 de noviembre de 1992, muere el señor Nieves Carrasquillo. Al momento de su muerte, el señor Nieves Carrasquillo no tenía familiares ascendientes o descendientes.
No empece al hecho que el señor Nieves Carrasquillo falleció el 13 de noviembre de 1992, la Administración de los Sistemas de Retiro continuó haciendo los pagos correspondientes a su prima. De esta forma, al estar recibiendo los pagos por el préstamo sin interrupción, la Cooperativa no advino en conocimiento del deceso del señor Nieves Carrasquillo. No es hasta luego de alrededor de un año que la Administración de los Sistemas de Retiro deja de hacer los pagos correspondientes al préstamo del señor Nieves Carrasquillo. La Cooperativa reclamó de los Sistemas de Retiro el pago adeudado, quien notificó por primera vez el 14 de diciembre de 1993 a la Cooperativa del fallecimiento. Posteriormente, el 18 de diciembre de 1993, la Cooperativa recibe de manera oficial la certificación del Sistema de Retiro del fallecimiento del señor Nieves Carrasquillo, ocurrido un año y un mes antes.
Luego de alegadas gestiones para conseguir los familiares del señor Nieves Carrasquillo, el 21 de agosto de 1995, la Cooperativa presentó la reclamación correspondiente ante COSVI, quien, mediante carta del 25 de octubre de 1995 denegó la reclamación.
Así las cosas, el 2 de julio de 1997, el señor Tapia Morales, quien sirviera como fiador, incoó demanda contra la Cooperativa y contra COSVI. La Cooperativa, a su vez, presentó demanda contra coparte. De lo anterior, COSVI solicitó la emisión de una sentencia sumaria a su favor, fundamentada dicha petición en que la causa de acción había prescrito. El Tribunal de Primera Instancia acogió favorablemente la solicitud de COSVI y emitió la sentencia aquí apelada.
II
Para sostener la alegación de que la reclamación del pago por COSVI está prescrita, el Tribunal basó su decisión en la interpretación que COSVI diera a cierta cláusula del contrato referente al "Aviso de Reclamación y Prueba de Pérdidas". La misma establece que:
Si un deudor asegurado sufre una pérdida cubierta por esta póliza, la Cooperativa de Seguros deberá ser notificada por escrito en su Oficina Principal en San Juan, Puerto Rico, y suministrársele evidencia fehaciente dentro de los siguientes noventa (90) días de la fecha en que ocurra o comience ésta. El dejar de suministrar dicha prueba dentro del término requerido, no invalidará ni reducirá ninguna reclamación si no fue razonablemente posible someter la prueba dentro de dicho término; siempre que tal prueba se suministre tan pronto como sea razonablemente posible más en ningún caso, excepto en ausencia de capacidad legal, más tarde de veinticuatro meses a partir de la fecha en que ocurre la pérdida.
Además, el Tribunal interpretó para llegar a su conclusión la sección denominada como "Acción Civil", en que explica que: *966 transcurrir noventa (90) días después de haberse suministrado prueba escrita de la pérdida, de acuerdo con los requisitos de la póliza. No se podrá entablar o iniciar ninguna acción legal luego de transcurridos dos (2) años a contar éstos desde la expiración del período de noventa (90) días dentro del cual debió suministrarse prueba escrita de la pérdida.

*965
"No se entablará ninguna acción civil o en equidad para recobrar, con arreglo a la póliza, antes de

*966 Antes de analizar el contenido de ambas cláusulas es necesario y pertinente explicar la doctrina de los contratos de adhesión. Los contratos de adhesión, según nos ilustra el Profesor José Ramón Vélez Torres son aquellos en que una de las partes contratantes no interviene en negociación previa alguna, porque la otra parte redactó el contrato, imponiendo sus propias condiciones, de modo que la parte no colabora en la formación del contenido del contrato. 
Ahora bien, la adhesión no es causa de nulidad, sino una norma de interpretación de los contratos que, por reducir a un mínimo la bilateralidad, obliga a los tribunales a restablecer "el ánimo consensual" al interpretar el contrato de la forma menos favorable a quien lo redactó, Casanova v. P.R.-Amer. Ins. Co., 106 D.P.R. 689, 697 (1978); C.R.U.V. v. Peña Ubiles, 95 D.P.R. 311, 314-315 (1967). Si invertimos la sintaxis, notaremos que el contrato de adhesión debe ser interpretado de forma liberal en favor de quien no formó parte de la redacción de las cláusulas del contrato. En los contratos de seguros, la parte a favor de quien debemos interpretar liberalmente es, obviamente, el asegurado, Casanova v. P.R. Amer. Ins. Co., supra, página 696; Ferrer v. Lebrón García, 103 D.P.R. 600, 603 (1975).
De lo anterior, que las cláusulas del contrato de seguro que hemos citado antes, son parte de un contrato de adhesión que el Tribunal de Primera Instancia debió interpretar liberalmente en favor del asegurado y restrictivamente en contra de la compañía aseguradora. De haberlo hecho así, en cuanto a los hechos particulares de este caso, forzoso era concluir que el término para hacer la reclamación no debía comenzar a contar hasta que conocieran o pudieran haber conocido del surgimiento de la pérdida, en este caso, de la muerte del señor Nieves Carrasquillo. Así, como la Administración de los Sistemas de Retiro continuó pagando la deuda a la Cooperativa, no podemos concluir que la Cooperativa conociera la muerte de su deudor o que debía haberla conocido. Dicho de otra forma, no es razonable que la Cooperativa tuviera conocimiento de la muerte del señor Nieves Carrasquillo, cuando continuaba recibiendo el importe por la deuda de éste.
Una vez enterada la Cooperativa del fallecimiento del señor Nieves Carrasquillo, el 18 de diciembre de 1993, presentó su reclamación a COSVI el 21 de agosto de 1995. Un mero ejercicio matemático nos muestra que la reclamación fue hecha dentro del término de dos años a contar desde que la Cooperativa tuvo conocimiento de la pérdida. Ahora bien, queda discutir si de acuerdo a los hechos particulares del caso ante nos debemos aplicar la doctrina de incuria.
ni
La defensa de incuria surge de la doctrina de equidad del derecho común angloamericano. La dejadez o negligencia de una parte en el reclamo de un derecho, que en conjunto con el transcurso del tiempo y otras circunstancias que causen peijuicio a la parte adversa, opera como impedimento en una corte en equidad, Aponte v. Secretario de Hacienda, 125 D.P.R. 610, 618 (1990). Ahora bien, en Puerto Rico, dada nuestra tradición civilista, el Tribunal Supremo ha aplicado la doctrina de incuria sólo a remedios extraordinarios, como el injunction, el mandamus o el certiorari. En cambio, en acciones civiles ordinarias con términos prescriptivos señalados en la ley, las decisiones de nuestro más Alto Foro son "consistentes en reiterar que en estas situaciones no procede la defensa de incuria". Véase, Aponte v. Secretario de Hacienda, E.L.A., supra; J.R.T. v. P.R. Telephone Co., Inc., 107 D.P.R. 76 (1978); Saavedra v. Central Coloso, Inc., 85 D.P.R. 421, 423 (1962).
El término prescriptivo en el caso ante nos surge de la ley. Así, es conocido que el contrato es la ley entre las partes y el contrato de póliza alrededor del cual gira el caso ante nos es la excepción. Al surgir del contrato el término prescriptivo de las acciones en el caso de autos, no podemos aplicar la doctrina de incuria.
El Tribunal de Primera Instancia cita el Artículo 1233 del Código Civil, 31 L.P.R.A. Sección 3471, como de aplicación a los hechos ante nos. No podemos coincidir. Dicho Artículo ordena que:
*967 Si los términos en un contrato son claros y no dejan dudas sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas.
Si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquéllas.
Desde principios del presente siglo y hasta nuestros días, el denominador común al interpretar dicho artículo ha sido el requisito de bilateralidad, que queda plasmado en el contrato al concurrir la intención, deseo o voluntad de las partes contratantes, siendo ese el criterio fundamental para fijar el alcance de las obligaciones contractuales, Marina Ind., Inc. v. Brown Boveri Corp., 114 D.P.R. 64 (1983); Merle v. West Bend Co., 97 D.P.R. 403 (1969); Luce & Co. v. Junta del Trabajo, 86 D.P.R. 425 (1962); Acevedo v. Sucesión Caraballo, 9 D.P.R. 424 (1905); Op. Sec. Just. Número 15 de 1978; Op. Sec. Just. Número 46 de 1958; In re: N-500L Cases, 517 F. Supp. 816 (1981); American Radiator & Standard Sanitary Corporation v. Maryland Cas. Co., 374 F. 2d 839 (1967).
Como explicáramos antes, el contrato de adhesión está caracterizado, precisamente, por la ausencia de bilateralidad y su interpretación tiene que ir dirigida a restablecer el ánimo consensual del contrato. Para así hacerlo, debemos de interpretar las cláusulas contractuales de forma más restrictiva respecto a la aseguradora COSVI. De esa forma cumplimos con nuestra obligación de restablecer la bilateralidad del contrato.
A base de lo anterior, llegamos a la conclusión que el término de 24 meses para presentar la reclamación ante COSVI debe comenzar desde que el asegurado adviene en conocimiento de ía pérdida o debió tener conocimiento de ello. Concluir lo contrario, conllevaría como consecuencia, a modo de ejemplo, que si el Sistema de Retiro, por error o negligencia, hubiese continuado con los pagos a la Cooperativa por 24 meses luego de la muerte del asegurado, el tiempo para hacer la reclamación hubiera concluido sin que nadie conociera del fallecimiento del señor Nieves Carrasquillo. O sea, el término prescriptivo transcurrió sin que aquel que debía ejercer la acción conociera de su obligación de actuar. Por lo tanto, es inevitable concluir que la reclamación a COSVI fue hecha a tiempo.
IV
Por los fundamentos antes expuestos, REVOCAMOS la Sentencia apelada.
Lo acordó y manda el Tribunal y lo certifica la Señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General