Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| ESTADO LIBRE ASOCIADO DE PUERTO RICO; ADMINISTRACIÓN DE VIVIENDA PÚBLICA; MAS, CORP.<br><br>*Apelado*<br><br>v.<br><br>ALIXMARIE CRISTÓBAL BALAY<br><br>*Apelante* | KLAN202400435 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2024CV00562 (603)<br><br>Sobre: Desahucio en Precario |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de julio de 2024.

Comparece ante nos la señora Alixmarie Cristóbal Balay (señora Cristóbal Balay o parte apelante) por derecho propio, mediante recurso de *Apelación* presentado el 3 de mayo de 2024 y nos solicita la revocación de la *Sentencia* emitida el 6 de febrero de 2024, notificada el día siguiente, por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante el aludido dictamen, el foro primario declaró Ha Lugar la *Demanda* de desahucio instada por el Estado Libre Asociado de Puerto Rico, Administración de Vivienda Pública (Administración de Vivienda o parte apelada). En consecuencia, ordenó a la parte apelante el desalojo de la propiedad.

Por los fundamentos que exponemos a continuación, **revocamos** la *Sentencia* apelada.

Número Identificador
SEN2024_____

**I.**

El 22 de enero de 2024, la Administración de Vivienda presentó *Demanda*[1] sobre desahucio en precario contra la señora Cristóbal Balay. En síntesis, alegó que, representada por su agente administrador, MAS Corporation (MAS), otorgó un contrato de arrendamiento de un apartamento ubicado en el Proyecto Residencial Manuel A. Pérez en San Juan, Puerto Rico, con la parte apelante. Sostuvo que esta última incumplió con dicho contrato por falta de pago, por lo que el mismo fue cancelado. Añadió que, la parte apelante estaba ocupando la unidad sin mediar contrato o merced alguna, por lo que era una precarista. En vista de ello, solicitó el desahucio, el desalojo y el lanzamiento de la señora Cristóbal Balay.

El 23 de enero de 2024, el TPI expidió el correspondiente *Emplazamiento y Citación por Desahucio*[2] a la señora Cristóbal Balay. El foro primario señaló vista para el 6 de febrero de 2024. Además, el 3 de febrero de 2024, se le acreditó al TPI que la parte apelante fue emplazada personalmente el 31 de enero de 2024[3].

Así las cosas, el 6 de febrero de 2024, se celebró a través de videoconferencia la vista señalada. La Administración de Vivienda compareció mediante su representación legal, el Lcdo. José R. Vicens Piñero. Por su parte, la señora Cristóbal Balay, no compareció por sí o mediante representación legal alguna. En consecuencia, el TPI anotó la rebeldía en contra de ésta.

En esta misma fecha, notificada el 7 de febrero de 2024, el TPI emitió *Sentencia*[4] en rebeldía, mediante la cual declaró Ha Lugar la acción de desahucio y ordenó a la parte apelante el desalojo de la propiedad.

---

[1] Véase entrada núm. 1 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[2] Véase entrada núm. 2 del SUMAC.
[3] Véase entrada núm. 3 del SUMAC.
[4] Véase entrada núm. 4 del SUMAC.

Tras varios incidentes procesales, el 12 de febrero de 2024, la señora Cristóbal Balay presentó una *Moción por Derecho Propio*[5]. En síntesis, adujo que desde el mes de diciembre notificó que no tenía trabajo, por lo cual no había podido cumplir con el pago de renta. Añadió que el administrador de vivienda le indicó que tenía un balance de mil setecientos dólares ($1,700.00), pero ella contaba con la cantidad de setecientos cincuenta dólares ($750.00)[6]. Sostuvo que acudió a la Administración de Vivienda a entregar el dinero, pero no se lo aceptaron porque presuntamente debía ser a través del Tribunal[7].

Seguidamente, el 15 de febrero de 2024, notificada el 27 de febrero de 2024, el TPI emitió una *Orden*[8], en la que determinó lo siguiente:

> Nada que proveer. El caso tiene sentencia final y firme de 7 de febrero de 2024. Se le sugiere acudir a la oficina de administración para atender el asunto y/o procurar asesoramiento legal en cualesquiera de las siguientes entidades, a saber, Servicios Legales de Puerto Rico, las Clínicas de Asistencia Legal de las Escuelas de Derecho, el Municipio de San Juan y/o el Colegio de Abogados de Puerto Rico.

Inconforme, el 3 de mayo de 2024, la señora Cristóbal Balay presentó el recurso de epígrafe. En síntesis, manifestó no estar de acuerdo con la *Sentencia* dictada por el foro primario. Asimismo, alegó no estar trabajando ni tener recursos económicos.

Por su parte, el 3 de junio de 2024, la Administración de Vivienda presentó una *Solicitud de Desestimación*, en la que adujo que la señora Cristóbal Balay presentó el recurso de *Apelación* fuera del término jurisdiccional de cinco (5) días, por lo que este foro revisor carecía de jurisdicción para atender el mismo. Además, señaló que procedía la desestimación del recurso de epígrafe debido

---

[5] Véase entrada núm. 8 del SUMAC.
[6] *Íd.*
[7] *Íd.*
[8] Véase entrada núm. 9 del SUMAC.

a que la parte apelante no notificó de su presentación a la Administración de Vivienda, ni a su representación legal.

El 4 de junio 2024, emitimos una *Resolución* en la que concedimos a la señora Cristóbal Balay hasta el 10 de junio de 2024, para expresarse en torno a la *Solicitud de Desestimación* presentada por la Administración de Vivienda. En cumplimiento con lo ordenado, el 10 de junio de 2024, la parte apelante compareció ante nos con un escrito intitulado *Contestación a Resolución y Desestimación.*

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**-A-**

El Tribunal Supremo de Puerto Rico ha resuelto reiteradamente que los reglamentos que disponen sobre la forma y presentación de los recursos ante foros apelativos deben observarse rigurosamente[9]. El propósito de estas normas reglamentarias es facilitar el proceso de revisión apelativa y colocar al tribunal en posición de decidir correctamente los casos[10]. Empero, nuestro Máximo Foro ha rechazado la interpretación y aplicación restrictiva de todo requisito reglamentario cuando ello derrote el interés de que los casos se vean en los méritos[11]. Sin embargo, esto no implica que una parte posee una licencia para soslayar de manera injustificada el cumplimiento con nuestro Reglamento[12].

Por ello, las partes —incluso los que comparecen por derecho propio— tienen el deber de observar fielmente las disposiciones

---

[9] *Hernández Maldonado v. Taco Maker*, 181 DPR 281, 290 (2011); *Pueblo v. Rivera Toro*, 173 DPR 137, 145 (2008); *Lugo v. Suárez*, 165 DPR 729, 737 (2005); *Pellot v. Avon*, 160 DPR 125, 134-135 (2003); *Febles v. Romar*, 159 DPR 714, 722 (2003); *Córdova v. Larín*, 151 DPR 192, 195 (2000); *Arriaga v. F.S.E.*, 145 DPR 122, 129-130 (1998).

[10] *Soto Pino v. Uno Radio Group*, 189 DPR 84, 90 (2013).

[11] *García Morales v. Mercado Rosario*, 190 DPR 632 (2014); *Pérez Soto v. Cantera Pérez, Inc.*, 188 DPR 98 (2013); *Pueblo v. Santana Vélez,* 168 DPR 30 (2006).

[12] *Arriaga v. F.S.E., supra.*

reglamentarias establecidas por nuestro ordenamiento para la forma y presentación de los recursos. Su cumplimiento —bajo ningún concepto— queda al arbitrio de las partes. Esta norma es de tal envergadura que, de no observarse las reglas referentes al perfeccionamiento de los recursos, el derecho procesal apelativo autoriza su desestimación[13].

Ante la severidad de esta sanción, en *Román et als. v. Román et als.*[14], el Tribunal Supremo estableció lo siguiente:

> [C]omo regla general, el mecanismo procesal de la desestimación como sanción debe utilizarse como último recurso. Por consiguiente, cuando el tribunal utiliza dicho mecanismo procesal en casos de incumplimiento con su Reglamento, debe cerciorarse primero que el incumplimiento haya provocado un impedimento real y meritorio para que el tribunal pueda atender el caso en los méritos. De esta manera se concilian el deber de las partes de cumplir con los reglamentos procesales y el derecho estatutario de todo ciudadano a que su caso sea revisado por un panel colegiado de tres jueces. Con este balance en mente, el tribunal apelativo puede y debe usar medidas intermedias menos drásticas dirigidas al trámite y perfeccionamiento diligente de los recursos de apelación.

En fin, a pesar de que el Tribunal de Apelaciones tiene discreción para desestimar los recursos que no se perfeccionan conforme las normas aplicables, no procede que una aplicación inflexible y automática de estos requisitos prive a un litigante de su derecho de acceso a la justicia y frustre el principio rector de favorecer que los casos se ventilen en los méritos[15].

**-B-**

El Tribunal Supremo de Puerto Rico ha establecido que el desahucio es un procedimiento especial de naturaleza sumaria, cuya finalidad es recuperar la posesión de una propiedad inmueble mediante el lanzamiento o expulsión del arrendatario o precarista que la detente[16]. Este procedimiento es regulado por el Código de

---

[13] *Hernández Maldonado v. Taco Maker, supra; Pueblo v. Rivera Toro, supra; Lugo v. Suárez, supra; Pellot v. Avon, supra; Febles v. Romar, supra; Córdova v. Larín, supra; Arriaga v. F.S.E., supra.*

[14] *Román et als. v. Román et als.,* 158 DPR 163, 167 (2002).

[15] *Gran Vista Inc., v. Gutiérrez Santiago,* 170 DPR 174 (2007).

[16] *Turabo Ltd. Partnership v. Velardo Ortiz,* 130 DPR 226, 234-235 (1992)

Enjuiciamiento Civil de Puerto Rico, cuyas normas determinan el curso a seguir en las acciones de desahucio[17].

El procedimiento sumario de desahucio persigue principalmente recobrar la posesión de un inmueble por quien tiene derecho a ella[18]. A modo de excepción, cuando la demanda se fundamenta en la falta de pago del canon o precio convenido, es posible acumular en el mismo procedimiento judicial, una acción en cobro de dinero[19]. En estos casos no se admitirá otra prueba que no sea el recibo o cualquier otro documento en que conste haberse verificado el pago[20].

En casos apropiados, el demandado puede presentar otras defensas afirmativas íntimamente relacionadas con la causa del desahucio, de forma tal que el procedimiento se torne en ordinario[21]. Ello, en reconocimiento de que el derecho de dominio no es de atribución absoluta de su titular, y puede ceder ante intereses sociales de orden superior.

Sin embargo, la necesidad de convertir el procedimiento sumario en uno ordinario no puede ocasionar dilaciones innecesarias, por lo que el demandado deberá establecer *prima facie* los méritos de su defensa[22]. La guía en estos casos deberá ser el sano discernimiento judicial. Una vez se esgrimen las defensas pertinentes, el juzgador deberá auscultar sus méritos, los hechos específicos que se aducen y discrecionalmente ordenar la conversión del procedimiento al juicio ordinario[23].

En lo que atañe al caso de autos, y para concretar las normas sentadas por esa jurisprudencia, el Artículo 632 del Código de

---

[17] 32 LPRA sec. 2821, *et seq.*
[18] *Fernández & Hno. v. Pérez,* 79 DPR 244, 247-248 (1956).
[19] 32 LPRA sec. 2829.
[20] *Íd.*
[21] *Mora Dev. Corp. v. Sandín,* 118 DPR 733, 747 (1987).
[22] *Mora Dev. Corp. v. Sandín, supra,* a la pág. 750; *Marín v. Montijo,* 109 DPR 268 (1979); *Brunet v. Corte,* 45 DPR 901 (1933).
[23] *Turabo Ltd. Partnership v. Velardo Ortiz, supra,* págs. 245-246.

Enjuiciamiento Civil, fue enmendado por la Ley Núm. 129-2007, para que dispusiera como sigue:

> En aquellos casos en que el arrendamiento de las viviendas sea subsidiado bajo los diferentes programas que administra el Departamento de la Vivienda de Puerto Rico, o cualquiera de sus dependencias, **se tendrá que cumplir con los reglamentos aplicables que regulan el proceso de desahucio**.[24] (Énfasis nuestro).

Esta disposición estatutaria obliga, pues, a los demandantes y al foro de primera instancia a tomar en consideración los reglamentos estatales y federales que regulen el arrendamiento de la propiedad en cuestión, si este forma parte de los programas de vivienda pública.

**-C-**

La Ley Núm. 66 de 17 de agosto de 1989, según enmendada, conocida como la *Ley Orgánica de la Administración de Vivienda Pública de Puerto Rico*[25] (Ley Núm. 66-1989) creó dicho organismo con el propósito de proveer vivienda pública adecuada y de calidad a las personas indigentes. Específicamente, la Administración de Vivienda es la entidad responsable de administrar eficientemente los residenciales públicos y de realojar a las personas residentes de estos cuando ello sea necesario.

En esa encomienda, la Administración de Vivienda tiene la facultad de cancelar contratos de arrendamiento de personas beneficiarias de vivienda pública. Sin embargo, al así hacerlo, la entidad está obligada a velar por el cumplimiento estricto de un debido proceso de ley[26]. Ello, pues la Corte Suprema de los Estados Unidos ha resuelto que las personas de escasos recursos económicos que residen en vivienda pública tienen un interés propietario, por lo que la cancelación de esos beneficios activa el

---

[24] 32 LPRA sec. 2836.
[25] 17 LPRA sec. 1001 *et seq.*
[26] *Payano v. Cruz,* 209 DPR 876, 900 (2022).

debido proceso de ley en su vertiente procesal[27]. Específicamente, la Corte Suprema concluyó lo siguiente:

> [T]he interest of the eligible recipient in uninterrupted receipt of public assistance, coupled with the State's interest that his payments not be erroneously terminated, clearly outweighs the State's competing concern to prevent any increase in its fiscal and administrative burdens. As the District Court correctly concluded, "(t)he stakes are simply too high for the welfare recipient, and the possibility for honest error or irritable misjudgment too great, to allow termination of aid without giving the recipient a chance, if he so desires, to be fully informed of the case against him so that he may contest its basis and produce evidence in rebuttal".[28]

En ese sentido, nuestro más alto foro, ha expresado que estas exigencias mínimas de un debido proceso de ley "cuestan muy poco al Estado, especialmente al compararlas con las garantías que ofrece para evitar una privación arbitraria y caprichosa de un derecho formal"[29].

**-D-**

Cónsono con las facultades delegadas por la Ley Núm. 66-1989, *supra*, el 31 de julio de 2015, la Administración de Vivienda adoptó el Reglamento Núm. 8624, *Reglamento sobre las Políticas de Admisión y Ocupación Continuada en los Residenciales Públicos del Estado Libre Asociado de Puerto Rico* (Reglamento Núm. 8624). Mediante dicho Reglamento, la Administración de Vivienda fijó las normas que rigen el proceso de "solicitud, admisión y ocupación de las viviendas en los residenciales públicos de Puerto Rico"[30].

En lo particular, la Sección XVIII del Reglamento Núm. 8624 contiene una lista de razones por las cuales la Administración de Vivienda podrá cancelar el contrato de arrendamiento de cualquier beneficiario de vivienda pública. Entre esas razones, establece que la agencia dará por terminado el contrato de arrendamiento por incumplimiento en el pago de renta[31].

---

[27] *Goldberg v. Kelly,* 397 US 254, 264-265 (1970).
[28] *Íd.*, pág. 266.
[29] *Pueblo v. Reyes Morán*, 123 DPR 786, 816 (1989).
[30] Reglamento Núm. 8624, Sec. IV.
[31] Reglamento Núm. 8624, Sec. XVIII, 18.1.2.

La Parte 2 de la precitada Sección, desglosa el proceso que la Administración de Vivienda ha establecido en el caso en que se cancele un contrato de arrendamiento, a saber:

(ii) En casos de cancelación de contrato por incumplimiento con el pago de renta, la Administración ha establecido el siguiente procedimiento de cancelación de contrato:

(a) Este proceso comenzar[á] una vez vencidos y adeudados dos (2) meses de renta.

(b) Previo a la Notificación de Intención de Cancelación de Contrato de Arrendamiento, el Administrador del Residencial deberá cumplir con lo siguiente:

1. Transcurrido cinco (5) días desde vencida la renta del primer mes, el Administrador del Residencial enviará un recordatorio a las Familias que no hayan presentado el pago de renta y hará un listado o informe de Familias morosas. El mismo será desglosado por balances pendientes de treinta (30), sesenta (60), noventa (90), y más de noventa (90) días, con una breve explicación sobre las gestiones de cobro realizadas.
2. A partir del vencimiento de la renta del segundo mes, comenzará el proceso de Notificación de Cancelación de contrato de Arrendamiento.

(c) La Intención de Cancelación de Contrato de Arrendamiento contendrá la siguiente información:

1. Nombre y dirección (física y postal) de la Familia.
2. Identificación de la causal y una breve explicación de los hechos que constituyen la causal para cancelación.
3. Las disposiciones legales o reglamentarias por las cuales se le imputa el señalamiento.
4. Fecha de efectividad de la cancelación.
5. Derecho a solicitar un plan de pago o vista.
6. Advertencia que de no solicitar el plan de pago o la vista dentro de los diez (10) días laborables siguientes a la Notificación de Intención de Cancelación se continuará con el proceso de cancelación de contrato.

(d) La opción de plan de pago será determinado por la Administración o el Agente Administración a base de los siguientes parámetros:

1. Dos meses de renta adeudados. Plan de pago de cuatro meses. El plan de pago constará de la renta regular más una cuarta (1/4) parte de la renta adeudada por mes.
2. Más de dos meses de renta adeudados.
   i. Si la deuda es menor de $300.00, se podrá utilizar la formula correspondiente a dos meses adeudados.
   ii. Si la deuda es mayor de $300.00, la Familia deberá informar en detalle sus ingresos y gastos en aras de determinar el dinero disponible con el que cuenta la Familia para asumir el plan de pago.

|       | iii. | El plan de pago establecido no será menor de $10.00 mensuales más la renta regular. |
|-------|------|-------|
|       | iv.  | No podrá exceder de doce (12) meses. |

A su vez, la Sección 19.2.3 (viii-ix) dispone que, en ese procedimiento administrativo, la Administración de Vivienda tiene la obligación de salvaguardar ciertas garantías mínimas del debido proceso de ley, a saber, la oportunidad de obtener los documentos pertinentes, la presentación de evidencia, el derecho a que se celebre una vista privada y el derecho a una adjudicación imparcial y conforme a Derecho[32].

**-E-**

Reconocemos que los Tribunales de Primera Instancia tienen una gran discreción en el manejo de los procedimientos celebrados en sus salas. En su misión de hacer justicia, la discreción es el más poderoso instrumento reservado a los jueces[33]. En el ámbito del desempeño judicial, la discreción no significa poder para actuar en una forma u otra, haciendo abstracción del resto del derecho; ciertamente, esto constituiría un abuso de discreción. La discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera[34]. Tal conclusión justiciera deberá estar avalada por el convencimiento del juzgador de que la decisión tomada se sostiene en el estado de derecho aplicable a la cuestión planteada. Ese ejercicio constituye "la razonabilidad" de la sana discreción judicial[35].

En el contexto de esa doctrina, debemos tener presente el alcance de nuestro rol como foro apelativo al intervenir precisamente con la discreción judicial. Es norma reiterada que este foro no habrá de intervenir con el ejercicio de la discreción del Tribunal de Instancia, salvo en caso de "un craso abuso de discreción o que el

---

[32] *Payano v. Cruz, supra*, pág. 900.
[33] *Banco Metropolitano v. Berríos*, 110 DPR 721, 725 (1981).
[34] *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 657-658 (1997).
[35] *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001).

tribunal actuó con prejuicio y parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial"[36].

Expuesta la norma jurídica, procedemos a aplicarla a los hechos ante nuestra consideración.

## III.

En su recurso, la señora Cristóbal Balay señala que erró el TPI al dictar la *Sentencia* apelada, mediante la cual declaró con lugar la *Demanda* sobre desahucio y ordenó su desalojo de la vivienda pública que ocupa.

Tras examinar el recurso presentado por la señora Cristóbal Balay y revisar minuciosamente el legajo apelativo, así como el expediente electrónico, constatamos que a la fecha de dictarse *Sentencia* y declarar ha lugar la *Demanda* sobre desahucio en precario instada por la parte apelada, no obraba en autos copia del contrato de arrendamiento, evidencia de notificación de deuda, o aviso de cancelación de contrato por falta de pago. Nuestro más alto foro ha expresado que es injusto, irrazonable y opresivo que en Puerto Rico se pueda desahuciar a un ciudadano sin más causa que la voluntad del arrendador[37]. Pues, la vivienda es una necesidad fundamental de todo ser humano.

En el caso ante nuestra consideración, el foro primario dictó *Sentencia* sin antes escuchar a la señora Cristóbal Balay, sin evidencia de la documentación de la deuda y con una *Demanda* que contenía alegaciones escuetas, amplias y genéricas, de las cuales no se desprendía la cantidad adeudada por la parte apelante, ni las gestiones realizadas por la Administración de Vivienda. Obsérvese que la sección 19.2.3. del Reglamento Núm. 8624 reconoce la

---

[36] *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986).
[37] *Cruz v. Peña Ubiles,* 95 DPR 311, 314 (1967).

importancia de salvaguardar las garantías del debido proceso de ley.

Esa normativa dispone que durante el proceso de la vista informal

se les debe garantizar a las familias participantes que el proceso será

imparcial, justo y rápido[38]. A tales fines, es imprescindible que la

vista cumpla con los siguientes requisitos:

> (a) La oportunidad para que la Familia obtenga los documentos que sean pertinentes a la vista. Los documentos que no se hagan accesibles a la Familia no podrán ser utilizados como evidencia en la vista.
>
> (b) Presentación de evidencia.
>
> (c) El derecho a que la vista sea en privado, salvo que la Familia solicite que sea pública.
>
> (d) El derecho a una decisión basada en los hechos presentados en la vista y sobre el expediente administrativo y en el derecho aplicable.[39]

Surge del expediente apelativo que hay ausencia total con el

cumplimiento del Reglamento Núm. 8624 y, como consecuencia,

incumplimiento con el debido proceso de Ley. Es preciso mencionar

que el Tribunal Supremo de Estados Unidos reconoció a las familias

participantes de programas gubernamentales de vivienda pública

cierto interés propietario, por lo que la cancelación de tal beneficio

activa las garantías que el debido proceso de ley reconoce en las

instancias en las que el Gobierno interviene con un derecho de tal

índole. La opinión hace un balance de todos los intereses en juego

ante esa situación:

> But we agree with the District Court that, when welfare is discontinued, only a pre-termination evidentiary hearing provides the recipient with procedural due process. *Cf. Sniadach v. Family Finance Corp.,* 395 U. S. 337 (1969). For qualified recipients, welfare provides the means to obtain essential food, clothing, housing, and medical care. *Cf. Nash v. Florida Industrial Commission,* 389 U. S. 235, 389 U. S. 239 (1967). Thus, the crucial factor in this context —a factor not present in the case of the blacklisted government contractor, the discharged government employee, the taxpayer denied a tax exemption, or virtually anyone else whose governmental entitlements are ended— is that **termination of aid pending resolution of a controversy over eligibility may deprive an eligible recipient of the very means by which to live while he waits. Since he lacks independent resources, his situation becomes immediately desperate. His need to concentrate upon**

---

[38] Reglamento Núm. 8624, XIX, Sec. 19.2.3, viii.
[39] Reglamento Núm. 8624, XIX, Sec. 19.2.3, ix.

> **finding the means for daily subsistence, in turn, adversely affects his ability to seek redress from the welfare bureaucracy**.
>
> Moreover, important governmental interests are promoted by affording recipients a pre-termination evidentiary hearing. [...] Welfare, by meeting the basic demands of subsistence, can help bring within the reach of the poor the same opportunities that are available to others to participate meaningfully in the life of the community. At the same time, welfare guards against the societal malaise that may flow from a widespread sense of unjustified frustration and insecurity. **Public assistance, then, is not mere charity, but a means to "promote the general Welfare, and secure the Blessings of Liberty to ourselves and our Posterity."** The same governmental interests that counsel the provision of welfare, counsel as well its uninterrupted provision to those eligible to receive it; pre-termination evidentiary hearings are indispensable to that end[40].

Contrario a las protecciones que el citado reglamento establece, el foro primario no proveyó a la parte apelante las garantías mínimas que deben regir las instancias en las que el Estado interfiera con los beneficios de asistencia social que reciben los residentes de vivienda pública. Por tanto, erró el TPI al ordenar el **desahucio sumario** de la parte apelante.

No podemos ser óbices de que se otorgue un debido proceso de ley a la señora Cristóbal Balay. A su vez, sería contrario al propósito procesal apelativo, desestimar esta causa de acción por falta de notificación. Si bien, este es un foro revisor, no estamos desatendidos de cumplir con el propósito reglamentario de hacer justicia y atender las causas ante nuestra consideración en los méritos, más aún, cuando hay en cuestión un asunto de tan alta jerarquía, como es el derecho a la vivienda.

En virtud de lo anterior, colegimos que erró el TPI al declarar ha lugar la *Demanda* de desahucio sin un debido proceso de ley. En consecuencia, devolvemos el caso al foro primario y ordenamos la conversión del procedimiento de desahucio sumario a un procedimiento ordinario.

---

[40] *Goldberg v. Kelly, supra.*

**IV.**

Por los fundamentos antes expuestos, **revocamos** la *Sentencia* apelada y devolvemos el caso al TPI para la continuación de los procedimientos cónsono con lo aquí resuelto.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones